**Lewellyn ACOFF, Plaintiff-Appellant, Cross-Appellee,**

v.

**D.E. ABSTON, J.T. Reed, Individually and as Police Officers, Tuscaloosa, Alabama; the City of Tuscaloosa, Alabama, A Municipal Corporation, et al., Defendants-Appellees, Cross-Appellants.**

No. 83–7248.

United States Court of Appeals, Eleventh Circuit.

June 12, 1985.

John W. England, England & Bivens, P.C., Tuscaloosa, Ala., for plaintiff-appellant, cross-appellee.

Robert W. Ennis, IV, Asst. City Atty., City of Tuscaloosa, Tuscaloosa, Ala., for City of Tuscaloosa.

Robert B. Harwood, Jr., Tuscaloosa, Ala., for Abston & Reed.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Lewellyn Acoff filed this suit under 42 U.S.C.A. § 1983 (West 1981) against the City of Tuscaloosa and police officers D.E. Abston and J.T. Reed. Acoff claimed that certain injuries inflicted on him by the officers violated his constitutional rights under the Fourth, Fifth and Fourteenth Amendments. Acoff appeals from the district court's order granting directed verdicts for all the defendants, while the defendants cross-appeal from an earlier denial of their motion to dismiss the complaint. We affirm the district court's denial of the motion to dismiss but on the basis of the Supreme Court's recent decision in *Tennessee v. Garner*, — U.S. —, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), we reverse the judgment in favor of the City and Officer Abston.

## I. FACTS

Early on the morning of August 1, 1981, Officers Abston and Reed of the Tuscaloosa Police Department received instructions to investigate a possible burglary in progress at a downtown store. En route to the store they received several dispatches leaving them uncertain as to the number of burglars at the scene. The officers arrived at the scene and left the car carrying shotguns; Abston walked to the rear of the store and Reed walked to the front.

Reed walked past the front of the building and turned the corner before he encountered Acoff, a black male, standing beside the building. Reed shined his flashlight on Acoff and shouted "hey" and "police" before Acoff turned and ran. Reed then shouted "halt"[1] and fired a warning shot into the air, but Acoff disappeared from sight before Reed began pursuit. As Reed began to run along the same route followed by Acoff, he broadcast over the walkie-talkie to Abston that a suspect was running towards University Boulevard.

At the rear of the building, Abston had heard his partner shout "police" and "halt" and then had heard a shot. Abston could not tell whether the shot had come from a shotgun. He then heard running footsteps but heard no walkie-talkie transmission, so he ran to intercept the suspect and saw Acoff running down University Boulevard. Acoff was holding a lug wrench and screwdriver in his hand but Abston could not identify the objects. Abston never shouted a warning. He fired the shotgun once and missed, then aimed a second shot at the "center mass" of Acoff's body and fired. Acoff was paralyzed from the neck down as a result of a gunshot wound to his back.

Abston testified that he had used deadly force in order to apprehend Acoff because he believed that Acoff might have burglarized the store and shot his partner and because Acoff was running too fast to be apprehended in any other way. Abston claimed not to know who had fired the shot he had heard. His decision to fire the shotgun was in keeping with the policy of the police department,[2] which allegedly provided for the use of deadly force as a last resort in apprehending a person suspected of committing a "serious felony," including

---

1. Reed testified that he might also have shouted "halt or I'll shoot."

2. The Tuscaloosa Police Department Procedural Manual does not distinguish between serious and non-serious felonies with regard to the use of deadly force. The officers, however, testified that the department maintained an unwritten policy restricting the use of deadly force to arrests for serious felonies such as burglary, robbery, murder, rape, and arson.

burglary. *See* ALA.CODE § 13A–3–27(b) (1982).

Acoff filed this suit in the Northern District of Alabama on July 30, 1982. The defendants moved to dismiss the complaint against the City on the grounds that the claim was time-barred by a statute governing tort claims against municipalities. ALA.CODE § 11–47–23 (1975). The district court denied the motion and the case proceeded to a jury trial. After the plaintiff had presented his evidence, the court directed verdicts in favor of all three defendants. The court reached this decision in favor of Reed because he had not shot Acoff and in favor of Abston and the City because the City policy governing use of deadly force was constitutionally permissible.

## II. STATUTE OF LIMITATIONS

■ Acoff filed this suit almost one year after the shooting. The City moved for summary judgment based on the provisions of ALA.CODE § 11–47–23 (1975):

> All claims against the municipality ... shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Since Section 1983 does not contain a specific statute of limitations, 42 U.S.C.A. § 1988 (West 1981) directs federal courts to select and apply the most appropriate or analogous state statute of limitations. *Burnett v. Grattan,* —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). So long as that analogous state provision is not inconsistent with the policies underlying the federal cause of action, *Johnson,* 421 U.S. at 465, 95 S.Ct. at 1722, a federal court may treat the state statute of limitations as controlling.

■ The Supreme Court's recent decision in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), bears on the choice of the most appropriate state statute of limitations. The Court ruled that federal law governs the characterization of Section 1983 claims for statute of limitations purposes and that all Section 1983 claims should be characterized as tort claims for recovery of damages for personal injury. Hence, the applicable statute of limitations in each state should be the one generally applicable to claims for personal injury. The federal policy of intra-state uniformity among different Section 1983 claims, relied upon by the Court in *Wilson,* would prevent federal courts from using a different statute of limitations in Section 1983 cases depending on whether a municipality were named as a defendant. This Court cannot, therefore, borrow Section 11–47–23 as the most appropriate and analogous state statute.

Federal courts in the past have applied ALA.CODE § 6–2–34 (1975) to Section 1983 claims. *Beard v. Stephens,* 372 F.2d 685 (5th Cir.1967). That six-year statute applies to "trespass to person" such as assault and battery and is the most appropriate statute to apply to claims for personal injury caused by the direct wrongdoing of persons acting under color of state law. Other federal courts have applied ALA. CODE § 6–2–39 (1975), governing "any injury to the person or rights of another not arising from contract and not specifically enumerated in this section," to personal injury claims under Section 1983. *Pennick v. City of Florala,* 529 F.2d 1242 (5th Cir. 1976). Clearly one of these two statutes will encompass claims for recovery of damages for personal injury such as those under Section 1983. *See Fomby v. City of Calera,* 575 F.Supp. 221 (N.D.Ala.1983). We need not decide between the two statutes because Acoff has filed within the time limits set by either statute. The district court properly denied the defendants' motion to dismiss.[3]

---

**3.** The district court dismissed this claim because up until the time Acoff filed his suit the Ala-

bama courts had interpreted the statute as a mere notice requirement (and, hence, an admin-

## III. USE OF DEADLY FORCE

█ Testimony at trial indicated that the Tuscaloosa Police Department might have used a modified version of the statewide policy[1] regarding the use of deadly force to effect an arrest. According to the testimony, police officers in Tuscaloosa could use deadly force to the extent they reasonably believed was necessary to arrest a person for commission of a "serious" felony such as murder, rape, robbery, burglary, and arson. Acoff contends that the policy is unconstitutional and that its application to him deprived him of his constitutional rights under the Fourth and Fourteenth Amendments.

The Supreme Court recently ruled upon a similar claim in *Tennessee v. Garner*, — U.S. ——, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In that case, a Memphis Police Officer shot and killed a suspect, Garner, fleeing the scene of a burglary despite the fact that the officer was reasonably certain that Garner was unarmed. The Court ruled that the shooting constituted a seizure of Garner and that it was unreasonable even though the officer had probable cause to arrest him. After balancing the nature and quality of the intrusion on Garner's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion, *see Delaware v. Prouse*, 440 U.S. 648, 653–55, 99 S.Ct. 1391, 1395–97, 59 L.Ed.2d 660 (1979), the Court arrived at a standard defining the reasonable use of deadly force to seize a person. Where a police officer

> has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

105 S.Ct. at 1701.

The *Garner* standard contains three elements. First, an officer must have probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others. Probable cause of this sort exists where the suspect actually threatens the officer with a weapon or where there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Second, deadly force must be necessary to prevent escape. Third, the officer must give some warning regarding the possible use of deadly force whenever feasible.

█ The policy of the Tuscaloosa Police Department clearly sanctions some unreasonable and unconstitutional seizures. It provides for the use of deadly force in order to arrest a person suspected of committing non-violent felonies such as burglary. *Garner* specifically holds that burglary alone may not be considered a crime involving the infliction or threatened infliction of serious physical harm. 105 S.Ct. at 1706. The policy makes no provision at all for feasible warnings or for probable cause regarding the risk of physical harm. The policy therefore allows the use of deadly force in some instances where it is forbidden by the Fourth Amendment.

█ The evidence presented by the plaintiff could also support a jury in the conclu-

---

istrative remedy that a Section 1983 plaintiff need not exhaust) rather than a statute of limitations. The court also noted that a statute of limitations shortening the time for suing municipalities in relation to other defendants might violate the policies underlying the remedy provided in Section 1983. *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Because either ALA.CODE § 6–2–34 (1975) or ALA.CODE § 6–2–39 (1975) is the most appropriate state statute of limita-

tions in this case, we need not consider these alternatives.

**4.** ALA.CODE § 13A–3–27(b) (1982) provides:

A peace officer is justified in using deadly physical force upon another person when and to the extent that he reasonably believes it necessary in order: (1) to make an arrest for a felony or to prevent the escape from custody of a person arrested for a felony.

sion that the application of the policy in this particular case transgressed constitutional standards. Abston testified that he gave no warning to Acoff under circumstances where a warning might have been feasible. The jury was certainly entitled to conclude that a warning was feasible and this alone would have established a violation of the legal standard. Further, even though Abston testified that he believed Acoff had shot his partner, the jury might have disbelieved him. Abston had heard voices before the shooting and could have heard Reed's attempted walkie-talkie transmission after the shooting. Given the paths of pursuit chosen by Abston and Reed, the jury might have concluded that Abston had seen Reed before firing the second shot. The jury also might have interpreted Abston's post-arrest report as an admission that he knew Reed had fired the original shot, for the report stated that Abston "heard Officer Reed shout, 'Halt,' and fire a shot." Finally, the jury could have concluded from the testimony regarding the relative positions of Abston and Acoff that deadly force was not truly necessary to effect the arrest. Since there was more than enough "substantial" evidence to justify a verdict against at least one of the defendants, the directed verdict was improper.[5] *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

The defendants contend that, even if the City's policy and Abston's execution of that policy in this case was unconstitutional, the directed verdict in their favor was still justified because of the recent emergence of the *Garner* standard. Abston invokes a qualified immunity from suit due to his "good faith" reliance on a City policy that was not clearly unconstitutional at the time of the shooting; the judgment in favor of all defendants could stand if this Court were to give the *Garner* decision prospective application only.

 The common law provides for retroactivity of judicial decisions, a general rule subject only to "limited exceptions." *Robinson v. Neil,* 409 U.S. 505, 507, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973). A Supreme Court decision interpreting the Fourth Amendment will receive retroactive application unless it meets the description set forth in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).[6] The most important factor in the retroactivity inquiry concerns the novelty of the decision. When a decision merely applies settled precedents to new and different factual situations, it applies retroactively. Conversely, where the decision expresses a rule of criminal procedure that is a clear break with the past, unanticipated and in conflict with old standards relied upon by law enforcement authorities, the decision has prospective application only.

---

5. Since there is no evidence that Officer Reed shot Acoff or was in any way liable for Abston's actions, the district court properly directed a verdict in his favor. We affirm this aspect of the judgment below.

6. A slightly different standard determines the retroactivity of civil and nonconstitutional decisions. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). While Acoff raises his Fourth Amendment claim in a civil suit, any civil liability would be based on a transgression of duties imposed by constitutional rules of criminal procedure. Hence, the *Johnson* analysis is the most appropriate in this case.

Even if the *Huson* analysis applied here, we would still apply *Garner* retroactively. Under *Huson,* once it has been determined that a decision has established "a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by decid-

ing an issue of first impression whose resolution was not clearly foreshadowed," courts examine the history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operations. Finally, courts weigh the inequity of retroactive application. 404 U.S. at 106–07, 92 S.Ct. at 355–56. As with the *Johnson* analysis, the critical threshold question is the novelty of the decision. For reasons enumerated in the text, it is likely that *Garner* was clearly foreshadowed by previous precedent. *Cf. Equal Employment Opportunity Commission v. Atlanta Gas Light Co.,* 751 F.2d 1188, 1190–91 (11th Cir.1985). Even if it were not, retroactive operation of the decision would allow victims of unconstitutional law enforcement practices to recover for their injuries without placing inequitable burdens on defendants. Defendants will, in proper cases, still be able to rely upon official immunities. Hence, *Garner* should apply retroactively even under the *Huson* analysis.

A separate factor concerns whether the new principle deprived the trial court of its very authority to convict or punish a criminal defendant in the first place.

We hold that the *Garner* decision was not an entirely new and unanticipated principle of law that would justify non-retroactivity. The decision, while not a simple application of past precedent, did follow the "balancing" methodology of many recent Supreme Court opinions. *See Michigan v. Summers*, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). There was no prior precedent overruled by *Garner*. Nor does the decision apply to any longstanding and widespread practice which the Supreme Court had sanctioned in prior cases or ignored while lower courts had approved of the practice with near unanimity. Indeed, several courts had expressed the view that certain uses of deadly force such as the one in question here violate the Constitution. *Garner v. Memphis Police Department*, 600 F.2d 52 (6th Cir.1979); *Landrum v. Moats*, 576 F.2d 1320 (8th Cir.), *cert. denied*, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *Mattis v. Schnarr*, 547 F.2d 1007 (8th Cir.1976), *vacated as moot sub nom. Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *see also Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388, 419, 91 S.Ct. 1999, 2016, 29 L.Ed.2d 619 (1971) (Burger, J., dissenting). The Alabama statute in question had been overturned by a district court in the Middle District of Alabama prior to the shooting incident in this case. *Ayler v. Hopper*, 532 F.Supp. 198 (M.D.Ala.1981). Furthermore, the opinion in *Garner* notes that reliance on the common law rule governing use of deadly force has steadily eroded and that many police departments restrict their use of deadly force more severely than necessary under the common law rule. 105 S.Ct. at 1703–05. In short, retroactive application of *Garner* would treat similarly situated defendants similarly and would comport with our judicial responsibility to resolve all cases before us under governing constitutional principles. *United States v. Johnson*, 457 U.S. at 555–56, 102 S.Ct. at 2590–91; *Desist v. United States*, 394 U.S. 244, 259, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). The *Garner* standard therefore will apply in this case. *Cf. United States v. Freire*, 710 F.2d 1515 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984).

The retroactive effect of *Garner* does not necessarily resolve the related issue of Officer Abston's qualified immunity. Police officers generally are shielded from liability for civil damages under Section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Eligibility for this immunity is determined on an objective basis and not on the basis of the officer's subjective beliefs. The immunity standard is designed to encourage summary disposition of immunity issues and to prevent public officials from having to defend against insubstantial claims. *Harlow*, 457 U.S. at 816–19, 102 S.Ct. at 2737–39.

The pertinent question, therefore, is whether the unconstitutionality of Tuscaloosa's policy regarding use of deadly force was "clearly established" at the time of the shooting. As noted above, the decision in *Garner* was not a clear break from prior precedent and was even foreshadowed by several lower court decisions, including a district court opinion striking down the statute underlying the Tuscaloosa policy. Yet the required level of clarity for a constitutional rule differs significantly for purposes of immunity and purposes of retroactivity. While any decision that does not make a clear break with the past might be applied retroactively, *United States v. Johnson*, 457 U.S. at 549–54, 102 S.Ct. at 2586–90, a rule must be "clearly established" before a police officer can be held

personally liable for failure to follow the rule. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). A clearly established rule is one that has been declared, but it is not yet clear which court or courts must declare a constitutional rule before a reasonable public official would stop relying on the statute or policy in question. *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978).

█ A reasonable person at the time of the shooting incident might have read the relevant appellate decisions, including *Wiley v. Memphis Police Department,* 548 F.2d 1247 (6th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), and the opinion in *Ayler v. Hopper,* 532 F.Supp. 198 (M.D.Ala.1981), and still have concluded that a policy allowing the use of deadly force to arrest a person for a serious felony was constitutional. *Ayler* dealt only with the facial validity of ALA.CODE § 13A–3–27 (1982) and not with the modified version of the rule allegedly used by the Tuscaloosa police. Further, to the extent that Abston's liability under *Garner* might be based on a failure to warn, the constitutional rule was even less well established.

Under these circumstances, we conclude that Abston's good faith immunity should be resolved on remand. The factual question of whether or not Tuscaloosa modified the statewide policy will have some bearing on the legal question of whether *Ayler v. Hopper* and other judicial decisions announced before the time of the shooting clearly established Acoff's constitutional right to constraints on the use of deadly force more stringent than the constraints used by the Tuscaloosa police. Because this determination has not yet been made, the judgment in favor of Abston cannot stand.

Accordingly, the judgment below is affirmed except for the grant of a directed verdict in favor of Abston and the City. The case is remanded for further proceedings not inconsistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.