316 F.3d 1210
 Jerry Charges VAUGHAN, Plaintiff-Appellant,
v.
Fred Lawrence COX, Officer, individually and in his official capacity as an officer of the Coweta County Sheriff's Department, Coweta County, Georgia, et al., Defendants-Appellees.
 No. 00-14380.
 United States Court of Appeals, Eleventh Circuit.
 January 3, 2003.
 
 Jeffrey J. Dean, Waycaster, Morris, Johnson & Dean, Dalton, GA, for Plaintiff-Appellant.
 Frank M. Lowrey, IV, Bondurant, Mixson & Elmore, LLP, Bruce A. Taylor, Jr., Drew, Eckl & Farnham, Atlanta, GA, for Defendants-Appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES
 Before CARNES, COX and NOONAN*, Circuit Judges.
 COX, Circuit Judge:
 
 
 1
 The issue presented by this case is whether Deputy Fred Lawrence Cox is entitled to qualified immunity and, consequently, is shielded from Jerry Charges Vaughan's suit seeking damages under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights arising out of a police chase. This case is before us on remand from the Supreme Court. In our earlier opinion, Vaughan v. Cox, 264 F.3d 1027 (11th Cir.2001), we concluded that a reasonable jury could find that Deputy Cox's use of deadly force was unconstitutional, but we affirmed the district court's grant of summary judgment to Deputy Cox in his individual capacity because he was protected by qualified immunity. Id. at 1035, 1037. The Supreme Court vacated our judgment and remanded the case for reconsideration in light of its recent decision in Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). We asked the parties to file supplemental briefs addressing the effect of Hope on the outcome of this case. Having reconsidered this case in light of Hope, we hold that Deputy Cox is entitled to qualified immunity.
 
 
 2
 The facts of this case are presented in our original opinion, and we need not repeat the story. See Vaughan, 264 F.3d at 1030-32. Vaughan filed suit for damages under 42 U.S.C. § 1983 alleging that Deputy Cox violated his Fourth Amendment rights by employing deadly force (firing a shot that paralyzed Vaughan) in violation of the constitutional requirements of Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Because Vaughan has alleged a constitutional violation and Deputy Cox has asserted a qualified immunity defense, we must conduct a two-part inquiry.[1] Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). First, we must ask if the facts, taken in the light most favorable to Vaughan, show that Deputy Cox's conduct violated Vaughan's Fourth Amendment rights. Id. at 201, 121 S.Ct. at 2156. Second, if we conclude that Vaughan's constitutional rights have been violated under the facts alleged, we must determine whether Vaughan's right was clearly established — that is, whether it would have been clear to a reasonable officer that Deputy Cox's conduct was unlawful. Id. at 202, 121 S.Ct. at 2156.
 
 
 3
 In our original opinion, we addressed Vaughan's purported constitutional violation and held that a reasonable jury could conclude — if the facts alleged by Vaughan were proven — that a constitutional violation occurred. Vaughan, 264 F.3d at 1034-35. The Supreme Court's decision in Hope does not modify our analysis of the underlying Fourth Amendment violation.
 
 
 4
 Having concluded that the facts alleged could support a constitutional violation, we now revisit the qualified immunity question: whether it would be clear to a reasonable officer that Deputy Cox's conduct was unlawful. It is well-settled that a constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In determining whether the contours of a constitutional right are clearly established, we examine cases that announce general constitutional rules or apply those rules to factual circumstances to determine if a reasonable public official, who is charged with knowledge of such opinions, would have understood the constitutional implications of his conduct. With regard to this inquiry, the Supreme Court in Hope cautioned that we should not be unduly rigid in requiring factual similarity between prior cases and the case under consideration. The "salient question," the Court said, is whether the state of the law gave the defendants "fair warning" that their alleged conduct was unconstitutional. Hope, 122 S.Ct. at 2516. We reconsider the qualified immunity issue in light of Hope.[2]
 
 
 5
 On remand, Vaughan relies exclusively on the rule announced in Tennessee v. Garner. His reliance is misplaced. In Garner, the Supreme Court held that deadly force is permissible if (1) the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, (2) the use of deadly force is necessary to prevent escape, and (3) some warning has been given, if feasible. 471 U.S. at 11-12, 105 S.Ct. at 1701; Acoff v. Abston, 762 F.2d 1543, 1547 (11th Cir.1985). Although a general constitutional rule "may apply with obvious clarity to the specific conduct in question" in limited circumstances, we conclude that the rule announced in Garner does not apply with "obvious clarity" to Deputy Cox's conduct in this case. United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997). The Garner rule does not always provide "a clear answer as to whether a particular application" of deadly force will be deemed unjustified by the courts. Cf. Saucier, 533 U.S. at 205, 121 S.Ct. at 2158 (concluding that the general constitutional rule in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), regarding the proper application of non-deadly force did not apply with obvious clarity to clearly establish that an officer's conduct was unlawful in the situation he confronted). Whether Deputy Cox had arguable probable cause, whether deadly force was necessary to prevent Vaughan's escape, and whether a warning was feasible in the instant case are all questions that the general Garner rule does not clearly answer. Because the Garner rule, standing alone, does not apply with "obvious clarity" such that Deputy Cox was given fair warning that his alleged conduct was unconstitutional, we must consider whether, in light of Hope, the cases applying the Garner rule provided fair warning to Deputy Cox that his conduct violated Vaughan's constitutional rights.
 
 
 6
 We conclude that prior decisions did not provide fair warning to Deputy Cox that his alleged conduct violated Vaughan's Fourth Amendment rights. Although the Hope decision can be read to invite Vaughan to offer analogous, though not necessarily factually identical, Fourth Amendment cases to show that the law was clearly established at the time of the shooting, Vaughan has failed to do so. Vaughan concedes that similar cases do not exist, (Vaughan Supp. Reply Br. at 5), and he cites only three cases — Garner, Graham, and Acoff — for the proposition that the law provided fair warning to Deputy Cox as of January 1998 that his conduct was unconstitutional. Garner and Graham, as noted above, establish general constitutional rules that do not apply with "obvious clarity" to the incident at issue in this case. Acoff was brought to our attention when this case was originally before us. See Vaughan, 264 F.3d at 1034. We conclude that Acoff, which involved a quite different factual circumstance and invalidated a general police policy that contravened the principles established in Garner, failed to provide fair warning to Deputy Cox that his application of deadly force violated the Fourth Amendment. Acoff, 762 F.2d at 1547-48.
 
 
 7
 The dissent concludes that summary judgment is improper because a reasonable jury, under Vaughan's version of the events, could find that Deputy Cox's conduct violated the Fourth Amendment. The dissent reasons that if the jury were to reach such a conclusion, Deputy Cox necessarily would have been on notice at the time of the shooting that his conduct was unconstitutional. This approach fails to acknowledge that law enforcement officers like Deputy Cox may reasonably but mistakenly conclude that probable cause exists to justify the use of deadly force. For qualified immunity purposes, therefore, we ask whether officers had "arguable probable cause" — that is, whether the officer reasonably could have believed that probable cause existed. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997). In contrast, the dissent's approach would deny qualified immunity in any case in which the jury could conclude that the officer actually lacked probable cause, effectively reading "arguable" out of the "arguable probable cause" standard. See, e.g., Knight v. Jacobson, 300 F.3d 1272, 1274 (11th Cir.2002); St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). We decline to adopt such an approach. In our prior opinion, we concluded that Deputy Cox had arguable probable cause, see Vaughan, 264 F.3d at 1036, and we reaffirm that decision today.
 
 
 8
 We reinstate our prior decision in its entirety and supplement, by this opinion, our previous discussion of qualified immunity.
 
 
 9
 SO ORDERED.
 
 
 
 Notes:
 
 
 *
 Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 We review de novo a district court's grant of summary judgment, drawing all inferences in favor of the nonmoving party, VaughanKorman v. HBC Fla., Inc., 182 F.3d 1291, 1293 (11th Cir.1999).
 
 
 [2]
 Even if the caselaw fails to make sufficiently clear to a reasonable public official the constitutional infirmity of his conduct, the official may not be entitled to qualified immunity if his conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw."Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir.1997). This exception is narrow. See Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir.2002). The Supreme Court's opinion in Hope neither eviscerated nor modified this court's decision in Smith, and on remand, Vaughan does not contend that Deputy Cox's conduct falls within Smith's narrow scope.
 
 
 NOONAN, Circuit Judge, dissenting:
 
 10
 The petition for a writ of certiorari in this case was granted, and the judgment of this court was vacated. Vaughan v. Cox, ___ U.S. ___, 122 S.Ct. 2653, 153 L.Ed.2d 830 (June 28, 2002). The case was remanded to us "for further consideration in light of Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)." Hope v. Pelzer had reversed another decision by the Eleventh Circuit Court of Appeals, 240 F.3d 975 (11th Cir.2001). That case had held that prison officials in Alabama would not be on notice that tying a prisoner to a hitching post for seven hours, his back bare to the sun, his wrists tortured by handcuffs that swelled with the heat, while he was denied any release to urinate or defecate and was denied any water by a guard who gave water from a pitcher to a dog but spilled it on the ground before the prisoner, was cruel and unusual punishment. The Eleventh Circuit in Hope found the conduct of the prison officials unconstitutional but held that there were no cases with "materially similar facts" that would have put the officials on notice that their conduct was cruel and unusual. Id. at 981. Reversing the circuit court decision, the Supreme Court noted that the "focus in the case was the Eleventh Circuit's position that a violation is not clearly established unless it is the subject of a prior case of liability on facts `materially similar' to those charged." The Supreme Court noted that the circuit court's decision "exposes the danger of a rigid overreliance on factual similarity." Hope, 122 S.Ct. at 2517. The Court went on to cite analogous binding Fifth Circuit precedents and to add: "The obvious cruelty inherent in this practice should have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment." Id. at 2511.
 
 
 11
 Invited to give "further consideration" to Vaughan's case in the light of Hope, the majority comes to the same conclusion it reached before. The majority states: "Whether Deputy Cox had arguable probable cause, whether deadly force was necessary to prevent Vaughan's escape, and whether a warning was feasible in the instant case are all questions that the general Garner rule does not clearly answer." Op. at p. 789.
 
 
 12
 In the prior opinion the court held that "a reasonable jury could find that Deputy Cox acted unreasonably in firing at the pickup." First, material issues of fact remain as to whether Vaughan and Rayson's continued escape presented an immediate threat of serious harm to Cox or others. Assuming Vaughan's version of events, it is not clear that Looney or Cox were in immediate danger from the suspects at the time of the shooting, nor does the record reflect that the suspects had or were likely to menace other innocent drivers. What Deputy Cox was faced with at the time he fired his weapon was simply two suspects who were evading arrest and had accelerated to eighty or eighty-five miles per hour in an attempt to avoid capture. Under such facts, a reasonable jury could find that Vaughan and Rayson's escape did not present an immediate threat of serious harm to Cox or others on the road.
 
 
 13
 "Second, a reasonable jury could find that it was feasible for Cox to warn the truck's occupants of the potential application of deadly force. According to Vaughan's version of events, Cox pulled his cruiser parallel to the truck, turned his rooftop lights on and waited for thirty to forty-five seconds before firing his weapon. A reasonable jury could therefore conclude that Cox had the time and opportunity to warn Vaughan and Rayson that he was planning to use deadly force before he opened fire." Vaughan v. Cox, 264 F.3d at 1034-35.
 
 
 14
 If a reasonable jury found the facts the court says it could find, Cox with time to warn Vaughan discharged his weapon three times into a small area containing two human beings. I do not see how Cox's conduct, if so found, differed in any material respect from the conduct found to be unconstitutional in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Surely it is not for this court to preempt the jury and resolve all material facts in dispute against Vaughan. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272; Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). If, as the court has stated, these facts could be resolved in Vaughan's favor, then Cox was on notice that to shoot a fleeing felon without notice is a seizure in violation of the Fourth Amendment. As the dissent in our first consideration of this case suggested, it is difficult to discern why, if police officers in Tennessee and Minnesota and Connecticut were on notice that the use of lethal force to restrain a suspect is unreasonable, Georgia police officers should be supposed slow to have learned. See Vaughan, at 264 F.3d 1027 (dissent). Not only case law gave notice. Just as "the obvious cruelty" inherent in their actions gave "some notice" to the Alabama prison officials in Hope, so the obvious danger inherent in shooting into the occupied front seat of a car gave Cox "some notice" of the unconstitutional character of his alleged action.