Mary BATES

v.

**Officer Kevin McKEON and Officer Andrew Bartha.**

**Civ. A. No. N–83–234(JAC).**

United States District Court, D. Connecticut.

Nov. 21, 1986.

Sue L. Wise, Jeffrey J. Drewniany, Williams and Wise, New Haven, Conn., for plaintiff.

Joseph Adinolfi, Jr., Joseph C. Morelli, Adinolfi, O'Brien & Hayes, P.C., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

JOSÉ A. CABRANES, District Judge:

This action seeks damages to redress an alleged deprivation of plaintiff Mary Bates' rights under the Constitution and laws of the United States and the laws of the State of Connecticut arising out of injuries allegedly sustained by plaintiff while in custody, following her arrest, in the Norwich Police Station. In particular, Bates claims a deprivation of her rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1983 and 1988 of Title 42 of the United States Code. Under the court's pendent jurisdiction, she also asserts claims sounding in tort. *See* Amended Complaint (filed Nov. 4, 1986), ¶ 11. A trial without a jury was held on November 4, 5 and 6, 1986.

Bates claims that while she was in custody at the Norwich Police Department on July 15, 1981, she was subjected to excessive force by the defendants resulting in a broken arm, as a consequence of her attempts to inquire about the status of her boyfriend, John L. Vaclavik, Jr., who had been arrested.

One of the defendants, Kevin McKeon, a Norwich, Connecticut police officer, has counterclaimed against the plaintiff for damages as a result of an assault and battery, under the common law of the State of Connecticut; the assault and battery was committed by Bates at the time McKeon sought to arrest Vaclavik on July 15, 1981.

On the basis of the evidence presented at trial, the court enters the following findings of fact, pursuant to Rule 52, Fed.R. Civ.P.

## Findings of Fact

On July 15, 1981, the defendants, Kevin McKeon and Andrew Bartha, were duly appointed officers in the Police Department of Norwich, Connecticut, acting in their official capacities. On that date, Bates, a citizen of the United States and a resident of Connecticut, was arrested by McKeon.

At approximately 6:00 P.M. on July 15, 1981, Bates and Vaclavik, her boyfriend, each of whom had had several alcoholic beverages that day, were travelling on Central Avenue in Norwich on Vaclavik's motorcycle. *See* Testimony of Mary Bates. Bates and Vaclavik were stopped by McKeon for an alleged motor vehicle infraction. It is not disputed that after McKeon handed Vaclavik the Infraction Summons and began to walk away, Vaclavik started shouting obscenities at McKeon. *See* Plaintiff's Ex. 1; Testimony of John L. Vaclavik, Jr.; Testimony of Kevin McKeon. It is likewise not disputed that McKeon then walked to Vaclavik and advised him that he was under arrest for the offense of breach of the peace and that, as McKeon touched Vaclavik's right arm in order to handcuff

him, Vaclavik resisted and a physical struggle ensued between McKeon and Vaclavik.

During McKeon's struggle with Vaclavik, Bates, who apparently was intoxicated, *see, e.g.*, Plaintiff's Ex. 25; Testimony of Brian Louis Filiatreault; Testimony of Mary Bates; Testimony of Dr. W.E. Richeimer, screamed obscenities at McKeon. It is not disputed that Bates then also struck McKeon several times, that McKeon thereafter placed Bates under arrest, that the arrest of Bates was lawful, and that Bates had no right to resist this lawful arrest. *See* Summation of Attorney Sue L. Wise. Indeed, Bates testified that she struck McKeon several times because she was unhappy about McKeon's efforts to arrest Vaclavik. She likewise conceded in her testimony at trial that she "assaulted" McKeon, that she thereby committed the criminal offense of assault on a police officer, and that she thus could be arrested by McKeon for that offense. *See* Testimony of Mary Bates; Testimony of Kevin McKeon; Summation of Attorney Sue L. Wise.

After Vaclavik had been subdued and safely placed in the rear of McKeon's police cruiser, McKeon (having been assaulted by Bates) attempted to place Bates under arrest. When McKeon advised Bates of her arrest, Bates refused to be handcuffed, became extremely violent and engaged in a physical struggle with McKeon on the roadway surface. Before McKeon finally subdued Bates, Bates kicked him numerous times in the legs and unsuccessfully attempted to kick McKeon in the groin. During the fracas, Officer Donald C. Cilley, Jr. arrived on the scene and observed Bates and McKeon engaged in a struggle. *See, e.g.*, Plaintiff's Ex. 4; Testimony of Donald C. Cilley, Jr. While McKeon was attempting to subdue Bates, she bit him in the left bicep area, causing a large black and blue mark. *See, e.g.*, Plaintiff's Ex. 1, Defendants' Ex. A (admitted also as a Plaintiff's exhibit); Testimony of Kevin McKeon; and Testimony of John L. Vaclavik, Jr. As a result of Bates' actions, McKeon's injuries required treatment at

Backus Hospital emergency room in Norwich, Connecticut. McKeon was given a tetanus shot to prevent any possible infection from the bite he received. *See, e.g.,* Defendants' Ex. W (also admitted as Plaintiff's exhibit).

It is not disputed that during McKeon's struggle with Bates, Vaclavik (then handcuffed in the rear of McKeon's police cruiser) kicked out the right rear window of the police cruiser and unsuccessfully attempted to crawl out. *See, e.g.,* Plaintiff's Ex. 1; Testimony of John L. Vaclavik, Jr.; and Testimony of Kevin McKeon.

Bates was finally subdued, placed in the rear of Cilley's police cruiser, and transported to the Norwich Police Station. While en route to the police station, she intentionally struck her head against the cage in the cruiser several times and was generally boisterous and highly agitated. *See, e.g.,* Plaintiff's Ex. 4; Testimony of Mary Bates.

After both Vaclavik and Bates were transported to the police station, Bates again became extremely hostile and violent. McKeon and Officer Andrew Bartha, under the direction of Sgt. Boris S. Avdevich, attempted to escort Bates into the secure holding area. Bates was advised by Avdevich to calm down and stop yelling, but she refused. Plaintiff's Ex. 2, Testimony of Boris S. Avdevich. Bates continued her violent actions, kicking and swinging her arms at both McKeon and Bartha. Bates attempted to kick McKeon and Bartha in the groin area, while screaming obscenities in a very loud voice. *See* Plaintiff's Exs. 1, 2; 3; Testimony of Kevin McKeon; Testimony of Andrew Bartha.

Several times during McKeon's and Bartha's attempts to move the plaintiff to the secure holding area, she attempted to pull away, swinging her arms and body in an attempt to break away from the officers and avoid detention. *Id.* Bartha held Bates' left arm on the way to the secure holding area. When the officers and Bates reached the entrance to the holding area, she began kicking and screaming at both McKeon and Bartha, in another attempt to break free.

Bartha, in an attempt to handcuff Bates, placed Bates' left arm behind her back and held it at the middle of her back as the front of her body was being held against a cabinet counter, thereby preventing further violent action by Bates and protecting both Bates and the police officers from injury. *See* Defendants' Exs. Z–1 to Z–13. While being thus held by Bartha, Bates made a sudden, violent, and quick motion with her upper body in an attempt to break free. She thereafter immediately complained of pain in her left arm and stopped struggling. Bates was promptly transported by ambulance to the Backus Hospital emergency room, where she was examined and treated. *See, e.g.,* Plaintiff's Exs. 22, 23, 25. Her arm was put in a cast. She was then transported back to the Norwich Police Department. As a result of her injuries, Bates was required to wear a cast for eight weeks and was under a doctor's care for approximately three months. Plaintiff's Ex. 26.

Vaclavik was thereafter charged with, *inter alia,* Breach of Peace (pursuant to Connecticut General Statutes § 53a–181), Resisting Arrest (pursuant to Connecticut General Statutes § 53a–167a) and Criminal Mischief in the Third Degree (pursuant to Connecticut General Statutes § 53a–117). *See* Plaintiff's Exs. 8, 11, 12, 13, 15, 18; Defendants' Exs. K–P.

Bates was thereafter charged with Breach of Peace (pursuant to Connecticut General Statutes § 53a–181), Assault on a Police Officer (pursuant to Connecticut General Statutes § 53a–167c), Resisting Arrest (pursuant to Connecticut General Statutes § 53a–167a), and Interfering with a Police Officer (pursuant to Connecticut General Statutes § 53a–167a). *See* Plaintiff's Exs. 8, 14, 16, 19.

On the basis of the evidence presented, including the testimony of McKeon, Bartha and Avdevich, which the court credits generally, it is clear that neither McKeon nor Bartha ever intended to inflict any injury on Bates. McKeon and Bartha intended

only to use such force on Bates as would have enabled them, on two different occasions (on the road and at the police station), to subdue her. It is equally clear that the police officers who applied force to Bates did so in direct response to her aggressive and violent actions, and that the force applied was a direct, measured, and proportionate response to her aggression and violence. There is no credible evidence to support the proposition that force was used maliciously or sadistically or for the purpose of causing harm to Bates. McKeon, Bartha and Avdevich acted in good faith and with the sole and reasonable objective of subduing Bates.[1]

## DISCUSSION

### I.

■ In this case, brought pursuant to 42 U.S.C. § 1983, there is no dispute that the defendant police officers were acting under color of state law. Bates claims a deprivation of her rights, privileges and immunities as secured by the First, Fourth, Eighth and Fourteenth Amendments to the Constitution. *Whitley v. Albers,* —— U.S. ——, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and that her right to be free from being subject to the use of excessive force was violated by the conduct of the defendants. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d (1985). *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

As plaintiff acknowledges, once it has been shown that force has been applied by defendants acting under color of law, the question of the excessiveness of the force applied is for the trier of fact. *See, e.g., Stratton v. Hatch,* 597 F.Supp. 128 (D.Vt. 1984).

In determining whether the constitutional line has been crossed, the court must "look[ ] to the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). The force applied to Bates which resulted in the fracture of her arm was not, in the circumstances proved at the trial, excessive.

Bates' claim that excessive force was applied to her merely because she orally complained to the defendants about their previous use of force against her boyfriend is simply not supported by the credible evidence. This is not a case where force was applied to prevent Bates' speech, obscene or otherwise. The use of force by the defendants against Bates, in light of her loss of control and her aggressive and hostile conduct, ought not to shock any reasonable person. It cannot be regarded as violating the conscience of a reasonable person, much less the collective conscience of the community.

■ Likewise, Bates' state law claims alleging assault and battery, negligence and gross negligence,[2] are, in the circumstances proved, completely without foundation.

In sum, all of Bates' claims, based on allegations of wrongful conduct by McKeon and Bartha, are devoid of merit.

1. The testimony of Mary Bates is generally not credited, including (in particular) her testimony regarding alleged intentional choking by defendants. Although the testimony of John L. Vaclavik, Jr., is, in large measure, fully consistent with that of defendants and other officers who testified at trial, his testimony regarding the alleged use of excessive force by defendants against Bates is not credited. The testimony of Gerald L. Foster (who, among other things, bald-facedly identified the wrong officer in open court, from an effective array of three males then sitting in the spectators' section of the courtroom in which Foster was testifying) is not credited. The court credits generally the testimony of Kevin McKeon, Andrew Bartha, Boris S. Avdevich, Donald C. Cilley, Jr., Lawrence P. Rice, Brian Louis Filiatreault and Dr. W.G. Richeimer. The court also credits generally the testimony of Chief of Police Richard J. Abele.

2. At trial, counsel for plaintiff withdrew her pendent state claim of intentional infliction of emotional distress.

## II.

### A.

■ On the other hand, Bates in her testimony at trial, and her counsel in oral argument, conceded that Bates had indeed committed an assault and battery on McKeon, at least during their initial encounter on the road. As Bates' counsel candidly observed in her summation at the conclusion of the trial, Bates neither denied improperly striking McKeon nor denied "certain misconduct on her part." The evidence proves that McKeon was hit and bitten by Bates, that he was required to have medical care at a hospital emergency room, and that he experienced pain as a result of his injuries for a week after the incident at issue here. Although the injuries which resulted from the attack of Bates upon McKeon are relatively modest in comparison to the risks to which police officers are exposed every day, they are not trivial or inconsequential or such that the court ought to consider the award only of nominal damages (as suggested by Bates' counsel). The attack on McKeon on the roadway was intentional and tortious and McKeon clearly suffered injuries as a consequence. The pain and suffering that resulted from the injuries was substantial. In these circumstances, there is no alternative to the entry of a judgment for McKeon against Bates on his counterclaim for the tort of assault and battery.

A counterclaim for assault and battery by a defendant police officer may seem unusual; indeed, not a single Connecticut case involving such a claim has been brought to this court's attention. Other courts, however, have faced the issue. Over a strong dissent, a California court has extended the so-called "fireman's rule" to deny police officers a cause of action, even when they have been the victim of intentional torts, as long as "the act causing the injury is one which the officer should reasonably expect to occur while he was engaged in the duty bringing him to the place of injury." *Lenthall v. Maxwell*, 138 Cal.App.3d 716, 719, 188 Cal.Rptr. 260, 262, 30 ALR 4th 73, 76 (1982). New Jer-

sey, another state that follows the "fireman's rule" when the tortfeasor has been negligent, has refused to extend its bar to intentional torts. According to the New Jersey Supreme Court,

> the public policy underlying the "fireman's rule" does not extend to intentional abuse directed specifically at a police officer. "To permit this would be to countenance unlimited violence directed at the policeman in the course of most routine duties. Certainly the policeman and his employer should have some private recourse for injuries so blatantly and criminally inflicted." *Kreuger v. City of Anaheim* ... 130 Cal.App.3d [166] at 170, 181 Cal.Rptr. [631] at 634. No fundamental unfairness results from allowing an officer to sue a criminal. The crook does not summon the police for help. While the police are paid to risk being assaulted, they are not paid to submit to a criminal assault. *Cf. State v. Mirault*, 92 N.J. 492, 499 [457 A.2d 455] ("We discern no legislative intention to discount assault upon police officers as though it were something to be expected, a part of the game, so to speak.")

*Berko v. Freda*, 93 N.J. 81, 90, 459 A.2d 663, 668 (1983). Police counterclaims for intentional assault are brought almost as a matter of course in New York City, and arrangements for bringing counterclaims have even been formalized by that city's Corporation Counsel. *See Smith v. City of New York*, 611 F.Supp. 1080, 1087 (S.D.N.Y.1985).

Thus, while there is some modest authority for barring counterclaims by policemen for intentional assault, Connecticut's two sister states, New York and New Jersey, clearly recognize such an action. Furthermore, Connecticut's own statutory scheme for providing disability compensation to state police injured "while making an arrest or in the actual performance of such police duties, ... or as a result of being assaulted in the performance of his duty," C.G.S. § 5–142, apparently contemplates re-

covery by the injured police officer against the tortfeasor. *See* C.G.S. § 31–293.[3]

Sound public policy also supports allowing police officers injured in the performance of their duty a cause of action against those who intentionally assault them. It is common knowledge that police officers as a group are frequently sued for alleged wrongful conduct. Can it be seriously suggested that the civil law ought not to recognize the possibility that police officers can ever be the victims of wrongful conduct?[4] Surely not. In this case, a police officer indisputably was the target of an intentional and wrongful assault and battery, and as a direct consequence of that assault and battery he suffered injury. Having been sued by his assailant for the allegedly excessive use of force in a second, related incident, he counter-sued for assault and battery. In these circumstances, the civil law cannot fairly limit the police officer's options to a mere defense of the lawsuit brought against him by his assailant. There is no general rule of civil law that, on the one hand, subjects police officers to liability for the wrongful use of force, but, on the other hand, prohibits police officers from asserting a claim against an assailant. In fact, "in these circumstances a counterclaim may fairly be regarded as integral to the defense." *Smith v. City of New York, supra,* 611 F.Supp. at 1086. In sum, the law does not require that in a court of law a police officer be relegated to the position of a sitting duck.

### B.

Under Connecticut law, the determination of damages for pain and suffering is within the sound discretion of the trier of fact. *Royston v. Factor,* 1 Conn App. 576,

577, 474 A.2d 108 (1984) ("Damages in personal injury cases cannot be computed mathematically, nor does the law furnish any precise, definite rule for their assessment. The trier of fact must evaluate the elements of an award and place a monetary value on the whole."); *Manning v. Michael,* 188 Conn. 607, 616, 452 A.2d 1157, 1162 (1982) ("The award of damages for pain and suffering is peculiarly within the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice.").

Under Connecticut law, punitive or exemplary damages are designed to be compensatory in nature, and are therefore limited to litigation expenses less taxable costs. *Gagne v. Enfield,* 734 F.2d 902, 904 (2d Cir.1984); *Clute v. Davenport Co.,* 584 F.Supp. 1562, 1580 (D.Conn.1984). Punitive or exemplary damages are awarded only when the evidence shows "indifference to the rights of others or intentional and wanton violation of those rights," and "punitive damage awards have specifically been recognized in tort cases." *Clute v. Davenport Co., supra,* 584 F.Supp. at 1580 (cited cases omitted). Connecticut courts have emphasized the primacy of intention in their definitions of "wantonness" and "malice":

> "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was a voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional."

---

**3.** Under C.G.S. § 5–142, the provisions of C.G.S. § 31–293 apply to any payments made by the state to the injured police officer. Under section 31–293,

> [w]hen any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter,

but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury . . . .

**4.** Of course, an assault on a police officer may be prosecuted under the criminal law. *See* C.G.S. § 53a–167c.

*Rogers v. Doody,* 119 Conn. 532, 534, 178 A. 51 (1935). "A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent .... [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." *Sharkey v. Skilton,* 83 Conn. 503, 507–508, 77 A. 950 (1910). The intentional injury aspect may also be satisfied if the resultant harm was the direct and natural consequence of the intended act. *Alteiri v. Colasso,* 168 Conn. 329, 334, 362 A.2d 798 (1975). Wanton misconduct is reckless misconduct. *Menzie v. Kalmonowitz,* 107 Conn. 197, 199, 139 A. 698 (1928). "It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." *Bordonaro v. Senk,* 109 Conn. 428, 431, 147 A. 136 (1929).

*Markey v. Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305, 1307 (1985). Bates' assault upon Officer McKeon clearly meets these standards. Thus, punitive as well as compensatory damages are appropriate. The assessment of the actual amount of punitive damages to be awarded is also the province of the trier of fact. *See Gagne v. Enfield, supra,* 734 F.2d at 905. Since in this case the trial was to the court, there appears to be no reason why a post-trial assessment of punitive damages cannot be made. *Cf. Gagne v. Enfield, supra,* 734 F.2d at 905 (where plaintiff failed to prove litigation expenses at trial before the jury, no punitive damages may be awarded). The parties are invited to submit memoranda and affidavits on the question of punitive damages, including the issue of whether further evidentiary hearings are required, and, if so, the nature and scope of such hearings. These memoranda should also address whether the court may, in its discretion, award punitive damages in an amount less than the prevailing party's actual litigation expenses.

## CONCLUSION

For the reasons stated above, in accordance with Rule 58, Fed.R.Civ.P., judgment shall enter forthwith (1) in favor of defendants Kevin McKeon and Andrew Bartha on the Amended Complaint (filed Nov. 4, 1986) of Mary Bates, and (2) against Mary Bates and in favor of defendant Kevin McKeon on McKeon's counterclaim that Bates committed an assault and battery on him.

Bates shall pay to McKeon the amount of $500 in compensatory damages. The amount of punitive damages to be awarded to McKeon will be determined after the parties have had an opportunity to address the issue. The parties' submissions on punitive damages shall be served and filed by no later than December 15, 1986.

It is so ordered.