**Gordon BUTTS**

v.

**David J. CAREY, individually and in his capacity as a Trooper in the Connecticut State Police Department.**

**Civ. No. N–86–261 (JAC).**

United States District Court, D. Connecticut.

Oct. 11, 1988.

Jeffrey J. Drewniany, Williams & Wise, New Haven, Conn., for plaintiff.

Scott M. Karsten, Sack, Spector and Barrett, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

### JOSÉ A. CABRANES, District Judge:

This action seeks damages to redress an alleged deprivation by defendant David J. Carey of plaintiff Gordon Butts' rights under the Constitution and laws of the United States and the State of Connecticut. Spe-

cifically, Butts claims a deprivation of his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Sections 1983 and 1988 of Title 42 of the United States Code. Under the court's pendent jurisdiction, he also asserts claims sounding in tort. A trial without a jury was held on October 3, 4, and 5, 1988.

Butts claims that on December 30, 1984, he was arrested by Carey, who was then a trooper in the Connecticut State Police Department,[1] without a warrant and without probable cause. He also claims that during that arrest Carey subjected him to excessive force.

On the basis of the evidence presented at trial, the court enters the following findings of fact, pursuant to Fed.R.Civ.P. 52.

### FINDINGS OF FACT

On December 29 and 30, 1984, the defendant, David J. Carey, was a duly appointed trooper in the Connecticut State Police Department acting in his official capacity. On those dates the plaintiff, Gordon Butts, was a citizen of the United States and a resident of Bridgewater, Connecticut.

On December 29, 1984,[2] at approximately 11:55 p.m., Carey approached a vehicle with five occupants.[3] The vehicle had pulled into the deserted driveway of a Connecticut Light & Power power station off State Route 132 in an unlit rural section of Bethlehem, Connecticut. *See* Testimony of David J. Carey. Gordon Butts was seated in the backseat of the vehicle behind the driver, who was the plaintiff's brother, Brian Butts. *See* Testimony of David J. Carey; Testimony of Elizabeth Dratch.

Gordon Butts had been drinking alcoholic beverages and had an open bottle of wine located between his legs on the floor of the backseat of the vehicle. *See* Testimony of Elizabeth Dratch; Testimony of Gordon

---

1. Carey is now a detective assigned to the State Police's Major Crimes squad.

2. Both Gordon Butts and Brian Butts testified that December 29, 1984 was a Friday. *See* Testimony of Gordon Butts; Testimony of Brian Butts. The court, however, takes judicial notice that it was a Saturday.

3. The occupants of the car were Gordon Butts, Brian Butts, Michael Deak, Elizabeth Dratch, and Christine Thurston. *See, e.g.,* Testimony of Gordon Butts.

Butts. Brian Butts had an altered license. *See, e.g.,* Plaintiff's Ex. 5 (Investigation Report of David J. Carey). Carey confiscated the license, took the bottle of wine from Gordon Butts, and returned to his cruiser to verify Brian Butts' age. *See* Testimony of David J. Carey.

Upon learning that Brian Butts was 19 years old, Carey returned to the Butts' vehicle and issued Brian Butts a written warning for possession of alcohol by a minor and a summons for altering his license. *See id.*

While Carey was returning to his cruiser, someone, apparently Brian Butts, yelled an obscenity at him. *See* Testimony of David J. Carey; Testimony of Brian Butts. Gordon Butts also yelled some obscenities. *See* Testimony of Gordon Butts; Testimony of David J. Carey. Carey became concerned that these were agitated and drunken young men who might be a danger on the public roads. *See* Testimony of David J. Carey. He radioed for "backup" assistance and returned to the Butts' vehicle, carrying his PR–24 police baton in both his hands in front of him at waist level. *Id.*

Upon reaching the Butts' vehicle, Carey asked who had yelled the obscenity at him. *See* Plaintiff's Ex. 5; Testimony of Brian Butts. Gordon Butts, who at the time was, by his own testimony, "agitated," responded that he had done so. *See* Testimony of Gordon Butts. Carey asked Gordon Butts to step out of the vehicle. *See* Testimony of David J. Carey. Gordon Butts lunged through the window so that his head and upper torso were outside, and he grabbed Carey's police baton. *See id.* Carey then told Gordon Butts words to the effect that he was under arrest.[4] *See id.*

Carey moved his police baton so that Gordon Butts could not maintain his grip on it. *See id.* Gordon Butts grabbed at Carey's shirt and right shoulder, ripping the shirt. *See id.* Brian Butts opened the car door and Gordon Butts came out. *See* Testimony of David J. Carey; Testimony of Christine Thurston. Brian Butts and the other male passenger, Michael Deak, also exited the car and approached Carey. *See*

Testimony of David J. Carey; Testimony of Brian Butts; Testimony of Michael Deak. Carey viewed their approach as threatening. *See* Testimony of David J. Carey.

Carey stepped back and swung his police baton in a defensive manner in the direction of Brian Butts, with the objective of having the three young men withdraw (rather than hitting anyone). *See* Testimony of David J. Carey. As he completed his swing he inadvertently struck Gordon Butts. *See id.* The police baton struck Gordon Butts in the mouth or lip. *See, e.g.,* Plaintiff's Ex. 5. Michael Deak then obeyed Carey's command to withdraw and return to the vehicle. *See* Testimony of Michael Deak.

Gordon Butts was taken into custody. He was charged with violating Conn.Gen. Stat. § 53a–167a, interfering with an officer, and Conn.Gen.Stat. § 53a–181, breach of the peace. *See* Plaintiff's Ex. 5.

At approximately 3:00 a.m. on December 30, 1984, while still in custody, Gordon Butts was treated at Charlotte Hungerford Hospital for what contemporaneous hospital records describe as a "small lip lac[eration]." *See* Plaintiff's Ex. 6; Testimony of Gordon Butts. The bill for such treatment, which Gordon Butts paid, was $72.00. *See* Plaintiff's Ex. 14; Plaintiff's Ex. 20.

In August 1985 and January 1986, Dr. Peter P. Mullen, a dentist, treated Gordon Butts' teeth. *See* Testimony of Peter P. Mullen. Prior to August 1985 Dr. Mullen's office had last examined Gordon Butts in February 1980. *See id.* At the August 1985 visit Gordon Butts asked to have his teeth straightened, and Dr. Mullen referred him to an orthodontist. *See id.* In January 1986 Gordon Butts made two further visits, at which Dr. Mullen performed two of the three steps of a root canal therapy program on the lower right incisor. *See id.* Gordon Butts also complained of a darkened top right front tooth. *See* Testimony of Peter P. Mullen; Testimony of Gordon Butts. Gordon Butts did not attend his appointment for the third step of the root canal, and he did not pay any of Dr. Mul-

---

4. Carey said, "You're pinched." *See* Testimony of David J. Carey.

len's fee for root canal therapy. *See* Testimony of Peter P. Mullen. The evidence at trial, including evidence of the gap between the date on which Gordon Butts was struck by Carey's police baton and the date of his complaints of dental injuries,[5] provides no basis for a finding that there was a causal connection between the two.

Attorney Robert Cimmino represented Gordon Butts at his trial on the criminal charges for which Carey arrested him. *See* Testimony of Gordon Butts. On May 2, 1985, the Superior Court, Part B at Waterbury, at the close of the State's case, ordered the entry of a judgment of acquittal on both charges. *See* Plaintiff's Ex. 4. Attorney Cimmino's fee for his representation of Gordon Butts was $2000, which Gordon Butts paid. *See* Testimony of Gordon Butts.

Gordon Butts visited Dr. Mullen in January 1986 at the behest of Attorney Cimmino, with the apparent intention (at least in part) of creating a "record" of damages. *See* Testimony of Gordon Butts.[6]

On the basis of the evidence presented, including the testimony of David J. Carey, Christine Thurston, and Elizabeth Dratch, which the court credits generally,[7] it is clear that Carey acted in a good faith belief that he had probable cause to arrest Gordon Butts. It is equally clear that when the three people exited the car Carey was confronted with a palpable threat of violence and that he used only such force as was necessary to defuse the situation. The force applied was a direct and measured response to the belligerence that Carey faced from three clearly hostile and angry young men, at least one of whom had been drinking alcoholic beverages. There is no credible evidence to support the proposition that the force used by Carey was excessive or disproportionate to the threat presented, or that force was used maliciously or sadistically for the purpose of causing harm to Gordon Butts or anyone else. There is also no credible evidence that Carey's police report contained false accusations.[8]

## DISCUSSION

In this case, brought pursuant to 42 U.S. C. § 1983, there is no dispute that the defendant was acting under color of law. *See* Complaint (filed July 31, 1986) ("Complaint"), ¶ 5; Answer (filed October 22, 1986), ¶ 2. The Complaint alleges that defendant deprived plaintiff of his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. On the basis of plaintiff's presentation of his case, however, *see* Representations and Summation

---

**5.** *See infra* note 6 and accompanying text.

**6.** At trial Gordon Butts and/or Attorney Drewniany represented that there was no claim regarding lost wages, no claim regarding the general crookedness of Gordon Butts' bottom teeth other than the right incisor, no claim regarding a scar on Gordon Butts' lower lip, and no claim of purposeful neglect or inadequate medical treatment while in custody. *See* Testimony of Gordon Butts; Representations of Attorney Jeffrey J. Drewniany (October 4 and 5, 1988). In any event, with respect to the medical treatment of plaintiff, the persuasive evidence at trial clearly established that plaintiff's relatively modest medical needs were promptly and effectively addressed. *See, e.g.,* Plaintiff's Exs. 6, 14 (records relating to emergency room treatment at Charlotte Hungerford Hospital).

**7.** The court also finds persuasive the testimony of Dr. Peter P. Mullen.

**8.** The testimony of Gordon Butts, Brian Butts, and Michael Deak is generally not persuasive, including (in particular) the testimony regarding alleged repeated "poking" of Gordon Butts by Carey with his police baton.

Serious contradictions between the various sworn statements of Gordon Butts are noteworthy. For example, in answers to interrogatories he said Carey "proceeded to strangle me," *see* Plaintiff's Ex. 22, while at trial he said Carey did not "strangle" him, but instead "poked" him with his police baton, *see* Testimony of Gordon Butts. At his deposition he said his date of birth was November 15, 1963, *see* Plaintiff's Ex. 3, while at trial he said his birthday was May 15, 1963, and that he "misspoke" at his deposition because of "nervousness," *see* Testimony of Gordon Butts.

It is also noteworthy that the testimony of Christine Thurston and Elizabeth Dratch, the two young women who accompanied the three young men on the night in question, lends *no* support to the testimony of the three young men. Indeed, their testimony, especially that of Christine Thurston, substantially and credibly contradicts the testimony of the three young men.

of Attorney Jeffrey J. Drewniany (October 5, 1988), the court finds that the only constitutional rights that have been put in issue are the right not to be arrested unless probable cause justifies the arrest, *see Baker v. McCollan*, 443 U.S. 137, 142–43, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979); *Motes v. Myers*, 810 F.2d 1055 (11th Cir.1987), and the right to be free from being subject to the use of excessive force, *see Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Bates v. McKeon*, 650 F.Supp. 476, 479 (D.Conn. 1986).[9]

"Although the existence of probable cause must be determined with reference to the facts of each case, in general probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983). In judging the existence of probable cause, courts must apply an objective standard and will not be bound by the subjective beliefs of the arresting officer. *See United States v. Buettner–Janusch*, 646 F.2d 759, 764 n. 6 (2d Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981); *United States v. Tramontana*, 460 F.2d 464, 466 (2d Cir. 1972).

▮ In this case, the court has found that Carey arrested Gordon Butts after Butts grabbed Carey's police baton. The existence at that time of probable cause to arrest Butts for either interference with an officer or breach of the peace may present difficult questions under Connecticut state law. It is arguable that Carey was not acting "in the performance of his duties" (within the meaning of Conn.Gen.Stat. § 53a–167a) between the time he left his cruiser with his police baton and the time Gordon Butts grabbed the police baton, as he had already issued the summons and the written warning and had not yet made any arrest. *Cf. State v. Weber*, 6 Conn.App. 407, 505 A.2d 1266, *certif. denied*, 199 Conn. 810, 508 A.2d 771 (1986) (conduct constituting interference with an officer occurred after defendant was told that he was under arrest for breach of the peace).[10] It is arguable also that a driveway of a power station at midnight with no one present other than a police officer and the five people in defendant's car is not a "public place" within the meaning of Conn.Gen. Stat. § 53a–181. *See State v. Robinson*, 23 Conn.Sup. 430, 184 A.2d 188, 189 (Cir.Ct., App.Div.1962) ("public place" for purposes of prior disorderly conduct statute, Conn. Gen.Stat. § 53–175, means a place that "members of the public use or attend for reasons of business, entertainment, instruction or the like").[11] Gordon Butts apparently was acquitted of these criminal charges precisely because of a judicial determination that he was not in a "public place" and Carey was not "in the performance of his duties." *See* Plaintiff's Ex. 4 at

---

**9.** Plaintiff contended at trial that his right to freedom of speech and his right to freedom from malicious prosecution were also infringed. See Representations and Summation of Attorney Jeffrey J. Drewniany (October 5, 1988). Both these claims are without merit; Carey's actions were not directed at Gordon Butts' speech but at his actions, and plaintiff presented no evidence of any action supporting a claim of malice by Carey once Gordon Butts was taken into custody.

**10.** When Gordon Butts was tried on this charge, it was the view of the presiding judge in the Superior Court that no rational trier of fact could find beyond a reasonable doubt that Carey was in the performance of his duties. *See* Plaintiff's Ex. 4 at 95–96. Although we have

serious reservations about a view that Carey's duties did not encompass investigating whether drunken young men might be a danger on the public roads, *see Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (local police officers frequently engage in "community caretaking functions"), we will assume that it is arguable that Carey was not acting "in the performance of his duties" within the meaning of Conn.Gen.Stat. § 53a–167a.

**11.** While Conn.Gen.Stat. § 53a–181(a)(2), regarding someone who "assaults or strikes another," does not make any mention of "public place," it is arguable that a person cannot have the requisite intent "to cause inconvenience, annoyance or alarm" without being in a "public place."

83, 95.[12] In sum, it is at least arguable that Carey did not have probable cause to arrest Gordon Butts at the time he did so.[13]

But the court need not resolve these questions. "Assuming, *arguendo*, that there was no probable cause to arrest plaintiff, a police officer will not be liable for a violation of civil rights if the arresting officer believed in good faith that the arrest was lawful and if this belief was reasonable." *Lindsey v. Loughlin*, 616 F.Supp. 449, 452 (E.D.N.Y.1985); *see also Dominguez v. Beame*, 603 F.2d 337, 342–44 (2d Cir.1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). The court has found that Carey believed in good faith that he had probable cause to arrest Gordon Butts. In light of the present state of Connecticut law regarding Conn.Gen.Stat. § 53a–167a and Conn.Gen. Stat. § 53a–181, that belief was surely reasonable. Accordingly, Carey has met his burden of showing the defense of "good faith."

■ We turn now to the alleged excessive force used by Carey. Once it has been shown that force has been applied by a defendant acting under color of law, the question of the excessiveness of the force applied is for the trier of fact. *Bates v. McKeon*, 650 F.Supp. at 479. The proper way to analyze a claim of undue force under § 1983 is to consider such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033,

94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *accord, Davis v. Little*, 851 F.2d 605, 610 (2d Cir. 1988).

In the circumstances proved at trial, the force applied by Carey, which resulted in an unintentional injury to Gordon Butts' mouth or lip, was not excessive. Indeed, in that situation it was a measured, proportionate, and reasonable response. At about midnight off a country state road in an unpopulated rural area Carey was faced with three hostile and angry young men coming out of a car, one of whom had been drinking alcoholic beverages and who had already grabbed at both his shirt and his police baton. The amount of force used was reasonable in relationship to the need in that situation, and the injury inflicted was relatively minor. The court has found that Carey was acting defensively in swinging the police baton; he was engaged "in a good faith effort to maintain or restore discipline" and was not trying to hurt Gordon Butts.

■ The state law claims, to the extent that there are any,[14] may be disposed of quickly. A claim of false imprisonment fails because, to the extent of Carey's good faith belief in the existence of probable cause to arrest, the restraint of Gordon Butts was not "unlawful," as required in *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982). To any claim of assault and battery Carey has, in the circumstances proved at trial, the compelling and persuasive defense of self-defense. *See Hanauer v. Coscia*, 157 Conn. 49, 54, 244 A.2d 611 (1968). Finally, Carey was not negligent in either his decision to make an arrest or in his use of force, as the court has found both to be reasonable under the circumstances.

---

12. *See also supra* note 10. The dismissal at the close of the State's case does not have collateral estoppel effects on this § 1983 claim. *See Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir.1983).

13. It is arguable too that Gordon Butts committed a battery on Carey by grabbing the police baton and physically attempting to take possession of it from Carey while Carey was engaged in an appropriate and lawful police inquiry.

14. The Complaint purports to be invoking "the pendent jurisdiction of this Court with respect to the causes of action under State law sounding in tort," Complaint, ¶ 2; *see also* Complaint, ¶ 17, but nowhere does the Complaint make any statements of the precise torts alleged.

## CONCLUSION

For the reasons stated above, in accordance with Fed.R.Civ.P. 58, judgment shall enter in favor of defendant.

It is so ordered.