**Robert B. DAVIS, Appellee,**

v.

**David LITTLE, individually and in his capacity as an officer in the Police Department of Waterbury, Connecticut, Appellant.**

**No. 1027, Docket 87–9058.**

United States Court of Appeals, Second Circuit.

Argued April 8, 1988.

Decided July 12, 1988.

Lawrence R. Pellett, Waterbury, Conn., for appellant.

Sue L. Wise, Williams & Wise, New Haven, Conn., for appellee.

Before LUMBARD, OAKES and MINER, Circuit Judges.

OAKES, Circuit Judge:

This appeal questions the validity of a judgment of $347,046.95 awarded by United States Magistrate Thomas P. Smith of the District of Connecticut, after a bench trial, in a section 1983 action brought by Robert B. Davis. The decision is reported as *Davis v. Little*, 670 F.Supp. 1115 (D.Conn.1987). Davis was hit by four of eight shots fired by David Little, a Waterbury, Connecticut, police officer, after Davis had escaped from police custody. One of the bullets shattered his elbow, ending his professional boxing career.

Although appellant raises numerous claims, only three merit discussion: (1) that there was no Fourth Amendment violation, (2) that the trial court was in error in applying *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), to an incident which occurred in 1981, and (3) that the magistrate erred in computing damages. As all the arguments are without merit, we affirm.

### FACTS

Magistrate Smith made detailed findings of fact, *see* 670 F.Supp. at 1115–19, which we will summarize here.

While driving to work on the morning of April 17, 1981, appellee Robert B. Davis was stopped by Waterbury police officer Robert Cleveland after he allegedly ran a stop sign. Officer Cleveland, after noticing a slight discrepancy between Davis's driver's license and the vehicle registration, ran a check on Davis and the automobile through the National Crime Information Center ("NCIC"). After the check proved negative, Cleveland allowed Davis to proceed. However, the police dispatcher then transmitted a "hit" on the NCIC check, stating that Davis was an "escapee." Officer Cleveland pursued and stopped Davis's car, asked Davis to produce his license and registration again, and did a pat-down search for weapons. Cleveland then had Davis sit in the back of the police car.

Although the trial testimony varies widely at this point, it is clear that Davis got out of the car, either assaulting or merely eluding Officer Cleveland and Lieutenant

Andrews (who had arrived as backup), and ran away. Meanwhile, Officers David Little and Louis Scozzafava, who did not know of the supposed assault on Officers Cleveland and Andrews, had been dispatched to support Officer Cleveland, and en route they heard several radio transmissions, giving a physical description of Davis, referring to him as an escaped felon and, in the last message, saying that the suspect "had 'escaped' and was running." *Id.* at 1117. Little and Scozzafava quickly spotted Davis running toward them, stopped their car, and took positions near the front of their car, service revolvers drawn. They claim that they ordered Davis to stop, but that instead he punched Little, shoved Scozzafava, and ran around them toward the back of the car. Davis testified that the officers ran at him with drawn guns, gave no warnings, and that he up-ended them not with violence but with some " 'fancy footwork' which 'faked them off their feet,' " *id.*— perhaps an "Ali" shuffle. While Magistrate Smith found the testimony of Davis more credible, he noted that the discrepancies were largely unimportant, because Little and Scozzafava admitted that they had seen that Davis was unarmed. There was, however, no dispute that although Officer Scozzafava fired a warning shot into the air, Officer Little aimed at Davis and emptied his revolver, hitting Davis with four of the eight bullets. Two of the bullets struck Davis in the buttocks, another grazed his shoulder, and the fourth shattered his left elbow, leaving him with a permanent partial disability.

Magistrate Smith found that at the time of the shooting Officer Little knew that Davis was an escaped felon who was in flight from Officer Cleveland's custody, that Davis was unarmed, and that Davis had made no threat to use deadly force on them or on any third party. *Id.* While absolving Officer Scozzafava, he held that Little had "used deadly force for the sole purpose of thwarting [Davis's] escape," *id.* at 1118, in violation of the standards set out in *Tennessee v. Garner* and *Dodd v. City of Norwich*, 827 F.2d 1, 7 (2d Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988). Under the circumstances, Officer Little had no reasonable basis to believe that Davis was armed or that he posed a danger to the officers or third parties. Instead, in the magistrate's words, "armed with service revolver and sheer conjecture," Little "shot first and looked for answers later." 670 F.Supp. at 1120. The court awarded Davis a judgment of $347,046.95 for lost wages, medical expenses, pain and suffering, and for incapacitation and permanent partial disability.

## DISCUSSION

Little's first argument is that his use of deadly force to apprehend Davis did not violate the Fourth Amendment, because the facts known or attributable to him, and the reasonable inferences he could have drawn from those facts, justified his actions. This argument would require us to find that the magistrate's findings of fact were defective, because the court measured the reasonableness of Little's actions by reference to the facts as Little knew them, without considering facts known to other members of the police department. Appellant is in essence asking us to commingle the standards for probable cause, *see, e.g., Wood v. Crouse*, 436 F.2d 1077 (10th Cir.) (per curiam), *cert. denied*, 402 U.S. 1010, 91 S.Ct. 2193, 29 L.Ed.2d 432 (1971), with those of reasonableness in using deadly force to arrest. But the two inquiries, while both necessary to a determination of whether an arrest violates the Fourth Amendment, are distinct. The collective knowledge of the police may bear directly on the legality of a decision to arrest a suspect, but reasonableness is to be determined in reference to the specific circumstances, acts, and individuals involved in effecting the arrest. *Cf. United States v. Valez*, 796 F.2d 24, 26 (2d Cir. 1986) (difference between probable cause to arrest a suspect and reasonable belief that individual was the suspect in question), *cert. denied*, —— U.S. ——, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987). In this situation, probable cause goes to the underlying validity of the arrest; reasonableness goes to the way in which the arrest was carried out.

The Supreme Court expressly distinguished between probable cause and reasonableness in *Tennessee v. Garner*, 471 U.S. at 7, 105 S.Ct. at 1699. There the State had submitted that once the police have proved the existence of probable cause, any Fourth Amendment analysis is complete. The Court disagreed, stating:

This submission ignores the many cases in which this Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted. To determine the constitutionality of a seizure "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." ... Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out.

*Id.* at 7–8, 105 S.Ct. at 1699 (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). Continuing its analysis, the Court went on to say that "[t]he same balancing process applied in the cases cited above demonstrates that, notwithstanding probable cause to seize a suspect, an officer may not always do so by killing him. The intrusiveness of a seizure by means of deadly force is unmatched." 471 U.S. at 9, 105 S.Ct. at 1700. Thus, the magistrate was perfectly correct in looking at the circumstances as a person in Officer Little's shoes saw them, as opposed to considering all the information that all the other officers possessed, in determining whether Officer Little's conduct was reasonable.

Applying this proper perspective, it is clear that Little's use of deadly force violated the Fourth Amendment. Magistrate Smith properly assessed Little's state of mind and knowledge, his reactions, and the surrounding circumstances. Little knew that Davis was a felon who had fled the custody of police, but he had no reason to believe that Davis posed a significant threat to his safety or to the safety of third parties. This, coupled with the failure to provide Davis with an adequate warning, did not justify the use of deadly force. *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701; *Dodd v. City of Norwich*, 827 F.2d at 7; *see generally* Comment, *The Unconstitutional Use of Deadly Force Against Nonviolent Fleeing Felons: Garner v. Memphis Police Department*, 18 Ga.L.Rev. 137, 154–57 (1983).

Appellant next contends that the magistrate erred in applying the rule of *Garner* to police activity which occurred several years before that decision was handed down, particularly in light of a Connecticut statute in force at the time of the shooting, Conn.Gen.Stat. § 53a–22 (1985),[1]

1. Conn.Gen.Stat. § 53a–22 at the time provided in part:

(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest or to prevent an escape from custody. A peace officer or an authorized official of the department of correction who is effecting an arrest pursuant to a warrant or preventing an escape from custody is justified in using the physical force prescribed in subsections (b) and (c) unless such warrant is invalid and is known by such officer to be invalid.

(b) Except as provided in subsection (a), a peace officer or authorized official of the department of correction is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it necessary to: (1) Effect an arrest or to prevent the escape from custody of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized; or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

(c) A peace officer or authorized official of the department of correction is justified in using deadly physical force upon another person for the purposes specified in subsection (b) only when he reasonably believes that such is necessary to: (1) Defend himself or a third person from the use or imminent use of deadly physical force; or (2) effect an arrest or to prevent the escape from custody of a

and Second Circuit case law, most notably *Jones v. Marshall*, 528 F.2d 132 (2d Cir. 1975), which might be read as justifying the shooting. Much of this argument strikes us as an attempt to argue a qualified good faith immunity defense in the guise of retroactivity analysis. Because the defendant did not present the trial court with any evidence that Officer Little acted in reliance upon the Connecticut statute or argue the point either to the trial court or to this court, we will not consider whether a such a defense would have been successful, *see generally Gomez v. Toledo*, 446 U.S. 635, 639–41, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980) (at least some burden of persuasion on defense in asserting good faith defense), although we would be hard pressed to see how Little's conduct could be interpreted as "not violat[ing] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (setting standard of "objective reasonableness"). The defense has been waived.

Returning to the question of retroactive application, the Supreme Court's most recent discussion of retroactivity, *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), left unchanged the standards set forth in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), as they relate to this case. *Johnson* made clear that no real question of retroactivity arises "when a decision of this Court merely has applied settled precedents to new and different factual situations." *Id.* at 549, 102 S.Ct. at 2586, *Garner* clearly fits within this category. Rather than announcing a new rule, the decision applied a traditional Fourth Amendment balancing test to a particular set of facts. 471 U.S. at 7–12, 105 S.Ct. at 1699–1701. While *Garner* went beyond merely applying past precedents, it neither overruled nor significantly modified existing Supreme Court case law. If the issue before us were the constitutionality of the Connecticut fleeing felon statute, then

*Garner* might be considered a significant change. But in its consideration of the specific facts, it was hardly " 'a clear break with the past.' " *Johnson*, 457 U.S. at 554, 102 S.Ct. at 2589 (quoting *Desist v. United States*, 394 U.S. 244, 248, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248 (1969)).

Every other circuit to consider the question has agreed that *Garner* should be applied retroactively. The D.C. Circuit, in applying *Garner* to a 1984 incident, pointed out that "*Garner's* reasonableness formulation is the one typically used in court review of fourth amendment seizures: reasonableness is to be determined by balancing the infringement of the individual's interest caused by the police action against the governmental interest served by that action." *Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C.Cir.1987). Similarly, the Eleventh Circuit held that *Garner* "was not an entirely new and unanticipated principle of law that would justify non-retroactivity," in applying the analysis to a 1981 incident. *Acoff v. Abston*, 762 F.2d 1543, 1549 (11th Cir.1985); *see also Lundgren v. McDaniel*, 814 F.2d 600, 602–03 (11th Cir.1987) (applying *Garner* to 1983 incident); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 & n. 3 (11th Cir.1985) (1981 incident); *Pruitt v. City of Montgomery*, 771 F.2d 1475, 1478–79 (11th Cir.1985). Other circuits which have applied *Garner* to pre–1985 events include the First, *Fernandez v. Leonard*, 784 F.2d 1209, 1216–17 (1st Cir. 1986) (1976 incident); *Kibbe v. City of Springfield*, 777 F.2d 801, 808 (1st Cir. 1985) (1981 incident), *cert. dismissed*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987); the Fourth, *Spell v. McDaniel*, 824 F.2d 1380, 1384 n. 3 (4th Cir.1987) (1983 incident), *cert. denied*, —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *Kidd v. O'Neil*, 774 F.2d 1252, 1254–57 (4th Cir. 1985) (1983 incident); the Fifth, *United States v. Bigham*, 812 F.2d 943, 948 (5th Cir.1987) (1982 incident); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir.1985) (1981 incident); the Sixth, *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987) (1981 incident); the Seventh, *Lester v. City*

person whom he reasonably believes has committed or attempted to commit a felony.

*of Chicago,* 830 F.2d 706, 711 (7th Cir.1987) (1979 incident); the Eighth, *Bissonette v. Haig,* 776 F.2d 1384, 1387 (8th Cir.1985) (1973 incident), *aff'd by lack of quorum,* ___ U.S. ___, 108 S.Ct. 1253, 99 L.Ed.2d 288 (1988); the Ninth, *Smith v. City of Fontana,* 818 F.2d 1411, 1416 (9th Cir.) (1982 incident), *cert. denied,* ___ U.S. ___, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); and the Tenth, *Ryder v. City of Topeka,* 814 F.2d 1412, 1416–18 (10th Cir.1987) (1979 incident). Thus, with the exception of the Third Circuit, which to our knowledge has yet to consider the question, the other circuits are unanimous in their retroactive application of *Garner.*

Although we came close to deciding the retroactivity question in *Dodd v. Norwich,* 827 F.2d at 7, the panel there found that *Garner* was inapplicable to the facts of that case. Our analysis is complicated further by our opinion in *Jones v. Marshall,* 528 F.2d 132 (2d Cir.1975), which upheld the Connecticut common law privilege allowing a police officer to use deadly force to apprehend a felony suspect, *see Martyn v. Donlin,* 151 Conn. 402, 198 A.2d 700 (1964). The Connecticut privilege considered in *Jones v. Marshall* had four factual elements: the officer must have (1) actually and (2) reasonably believed that the fleeing person was a felony suspect and must (3) actually and (4) reasonably have believed that the circumstances made it necessary to use deadly force to make the arrest. 528 F.2d at 142–43. We noted that the absence of any one of the four elements would have defeated the privilege, *id.* at 143, but were unable to apply the standards to the facts of *Jones v. Marshall* because the parties had stipulated to the existence of all four facial predicates. *Id.* at n. 25. Had the trial court been free to determine whether the circumstances made the use of deadly force necessary to effect the arrest, the result in *Jones v. Marshall* might have been different. And were we in a position to apply that same standard to the facts of the case now before us, it is doubtful whether we could hold this shooting privileged.

More importantly, *Jones v. Marshall* recognized that the proper way to analyze a claim of undue force under section 1983 was to consider factors such as " 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort ... or maliciously or sadistically.' " *Id.* at 139 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Although we note, as did Judge Ruth Bader Ginsburg in *Martin v. Malhoyt,* 830 F.2d at 261 n. 76, that the Fifth Amendment approach advocated by Judge Friendly in *Johnson v. Glick* is no longer appropriately extended to excessive force claims that arise in the context of an arrest, the similarities between this test and the Fourth Amendment balancing test set forth in *Garner* far outweigh any differences. Additionally, throughout the *Jones v. Marshall* opinion there are references to the evolving character of the law of arrest. For example, we noted "a discernible trend in this century away from allowing the use of deadly force by a police officer in effecting a felon's arrest." 528 F.2d at 139. In short, a careful reading of *Jones v. Marshall* makes it clear that it is essentially consistent with, rather than contrary to, *Tennessee v. Garner.*

Little also argues that the existence of the Connecticut fleeing felon statute, Conn. Gen.Stat. § 53a–22, in force in 1981, also makes the retroactive application of *Garner* inappropriate. Were the defendant making a qualified immunity argument, then the existence of the statute might be significant; however, as *Garner* itself makes clear, the existence of a state statute does not fix the progress of constitutional law. 471 U.S. at 11–12, 105 S.Ct. at 1701 (Tennessee statute found unconstitutional as applied, but not on its face). As we said in *Jones v. Marshall,* "[a] state rule of immunity or privilege which allows a state officer to escape liability for a deprivation of 'rights, privileges, or immunities secured by the Constitution of the United States' is simply not controlling under 42 U.S.C. § 1983." 528 F.2d at 137. Our retroactivity analysis focuses on the per-

ceived change in federal law, not on existing state law. As a result, we find that the *Garner* standard was properly applied.

■ The last of Little's claims that we will discuss in depth[2] involves the magistrate's computation of damages. He argues that the magistrate should have taken into account income taxes which would have been due on past income awarded and failed to account for expenses which would have been incurred in regard to future boxing income. However, these matters were raised neither at trial nor in the post-trial memorandum. In considering the income tax issue, we turn to *Fanetti v. Hellenic Lines*, 678 F.2d 424, 432 (2d Cir.1982), *cert. denied*, 463 U.S. 1206, 103 S.Ct. 3535, 77 L.Ed.2d 1387 (1983). There we extended to all claims for future wages based solely on federal law the Supreme Court's holding that a jury must be instructed to deduct future income taxes from its determination of the amount of future lost wages. *Id.; Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). However, we were careful to say that "to take advantage of the after-tax principle, a defendant must invoke it in timely and proper fashion." 678 F.2d at 432. Because Little failed to raise the issue at trial, we refuse to adjust the magistrate's figure. As to the lost future boxing income, we note that the magistrate awarded an amount roughly midway between the high and low estimates of Davis's potential income. As that amount could very well

have included a deduction for future expenses, we will not reduce the award.

Judgment affirmed.

LUMBARD, Circuit Judge, concurring:

I am in substantial agreement with the court's opinion.

Officer Little's actions were clearly unreasonable in light of the standards for the apprehension of fleeing suspects existing in 1981.

In my view, the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), simply crystalized the state of the law governing the use of deadly force by a police officer to apprehend a fleeing suspect as it existed in 1985. The standard articulated in *Garner* did not represent a clear break with the past. Consequently, I see no question of retroactivity and would apply its standard to this case. Under *Garner*, a police officer cannot use deadly force against an apparently unarmed fleeing suspect when the police officer does not have probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Id.* at 11, 105 S.Ct. at 1701.

In this case, I believe that it is clear from the record that officer Little acted unreasonably in shooting at Davis eight times. Officer Little admitted that he had no reason to believe that Davis was armed or that

---

**2.** Little also argues that in his complaint Davis failed to allege a Fourth Amendment violation. However, some 20 months before trial, Davis raised the Fourth Amendment issue in response to a trial preparation order, arguing that the Connecticut fleeing felon law was unconstitutional and relying on the *Garner* case as it had been decided by the Sixth Circuit. *Garner v. Memphis Police Dep't*, 710 F.2d 240 (6th Cir. 1983), *aff'd*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed. 2d 1 (1985). Thus, defendant clearly had sufficient notice of the claim, argued it at trial, and can point to no prejudice suffered. In the liberal spirit of the Federal Rules, the mere failure to amend the complaint should not affect the outcome. Fed.R.Civ.P. 15(b).

Little's final argument is that Magistrate Smith abused his discretion in denying his motion for a continuance to allow his attorney

more time to prepare for trial. In our view the magistrate handled the situation properly in denying the motion but adjusting the trial schedule by shortening several trial days to allow Little's attorney to take depositions. A firm date for the beginning of the trial had been set over two months earlier, and this, coupled with the magistrate's accommodating scheduling and the defendant's failure to show that he suffered any prejudice, convince us that there was no abuse of discretion. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). *Compare Beary v. City of Rye*, 601 F.2d 62 (2d Cir.1979) (abuse of discretion for district court to respond to plaintiff's late afternoon request for a continuance until following morning by ordering plaintiff to rest immediately and granting defendant's motion for dismissal).

Davis posed a threat of using deadly force on him, his partner or third parties.

I agree with the court that the record fully supports the district court's award of damages.