**George HEATH, Appellant,**

**v.**

**Robert C. HENNING, as Commissioner, Police Department, Town of Orchard Park, Police Officer Michael J. Sherry, and Police Officer Robert F. Zeihm, Appellees.**

**No. 1266, Docket 86–2459.**

United States Court of Appeals, Second Circuit.

Argued June 17, 1988.

Decided Aug. 5, 1988.

William D. Smith, Cadwalader, Wickersham & Taft, New York City (Gregg J. Breitbart, Cadwalader, Wickersham & Taft, New York City, of counsel), for appellant.

John J. Flynn, Maghran, McCarthy & Flynn, Buffalo, for appellees.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment after a jury verdict in favor of the defendant police officers in a section 1983 action in the

---

United States District Court for the Western District of New York, tried by consent before Edmund F. Maxwell, Magistrate. Appellant George Heath claims that the district court improperly instructed the jury as to the legal standard to be applied in considering the use of deadly force to arrest him and abused its discretion in denying Heath's motion to set aside the verdict. Because we agree with Heath's first argument, we reverse and remand for a new trial.

## FACTS

On the night of June 24, 1981, George Heath, assisted by his half-brother, Carl Dudley, attempted to rob the Stadium Inn, a bar-restaurant in Orchard Park, New York. Heath was carrying two concealed handguns—a .357 magnum revolver, which he carried in a bag, and a small Beretta pistol, which was strapped to his left ankle. Heath did not display either weapon while he was demanding money from the Inn's proprietor but did briefly display the revolver as he ran from the restaurant, after his efforts proved unsuccessful. Heath and Dudley fled the scene in a car driven by Dudley.

A number of Orchard Park police officers were quickly alerted about the attempted robbery and informed by the radio dispatcher that a suspect had brandished a large caliber revolver. Soon three police vehicles were in pursuit of Dudley's car, which shortly thereafter skidded off the road and into a ditch. Heath then threw the revolver out of the car, climbed out the passenger window, and ran up a small embankment next to the ditch. As he reached the top of the embankment three police vehicles surrounded the getaway car. Dudley, who had remained in the car, was quickly apprehended.

Heath, after reaching the top of the embankment, started to run across a field toward a grove of trees. Two police officers who were on the scene testified that they did not see any weapon in Heath's hands. However, two other officers, defendants Michael J. Sherry and Robert E. Zeihm, each testified that he saw a pistol in Heath's right hand as he fled the car. Each also testified that Officer Zeihm yelled at Heath to halt and that, when Heath continued running, each fired a single shot at Heath and that Heath continued to run until he "dove" into a row of trees. A bullet struck Heath in the left thigh, passing through the tissue and leaving his body. As the bullet was never recovered, it was impossible to tell whether Zeihm or Sherry fired the shot which struck Heath.

Another policeman, Officer Joseph Wales, reached Heath approximately ten to fifteen seconds after the shooting. Wales found the Beretta in a holster which was fastened around Heath's ankle. Heath was then arrested and taken to a hospital. He was later convicted of attempted robbery, criminal use of a firearm, and criminal possession of a firearm.

## THE JURY CHARGE

Heath's amended complaint charged that Officers Zeihm and Sherry had violated his constitutional rights to due process by subjecting him to an unreasonable and unnecessary use of deadly physical force during the arrest, and that Police Chief Henning was also culpable because he failed to train adequately Officers Zeihm and Sherry in the use of deadly force. After several days of testimony, Magistrate Maxwell's charge to the jury included an instruction on New York's so-called justification statute, N.Y.Penal Law § 35.30 (McKinney 1987) ("Article 35"),[1] and instructions on

---

**1.** § 35.30 Justification; use of physical force in making an arrest or in preventing an escape

1. A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such to be neces-

sary to effect the arrest, or to prevent the escape from custody, or to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force; except that he may use deadly physical force for such purposes only when he reasonably believes that:

(a) The offense committed by such person was:

Heath's constitutional rights under the Fourth and Fourteenth Amendments. As part of the charge, the trial court stated,

> The third element concerns itself with whether the acts and conduct of the Defendants deprived Plaintiff of his constitutional rights. Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment which provides the right of people to be secure and their persons shall not be violated, and application of undue force by law enforcement officers deprives an individual of the Fourteenth Amendment right to be secure in his person and thus represents a deprivation of liberty without due process. The requirement of the use of force under Rule 1983 must be that it neither permits brutal police conduct nor allows such application of undue force that the police conduct shocks the conscience.

After instructing the jury on Article 35, the magistrate went on to say that the plaintiff had the burden of showing that the defendant police officers acted with malice, stating that

> the Plaintiff in attempting to prove actual malice need not prove that Defendants acted out of spite or hatred or corrupt desire, however must prove the motivation of the Defendants was improper and wrongful. If you find that any of the Defendants did not act for wrongful or improper reasons, then you should render a verdict in favor of such Defendant.

After extended deliberations, the foreperson of the jury sent the court a note asking, "[D]oes our decision upon the violation of Plaintiff's civil rights have to be based on only Section 35.30 of the [N.Y.] Penal Law and what else must we consider." In response to this question, the court

reinstructed the jury on section 1983, including a statement that the officers must have acted "outside the limit of their lawful authority and with malice." Approximately one-half hour after this instruction was given, the jury returned a verdict in favor of the defendants.

## DISCUSSION

■ The legal standard to be applied in cases where a police officer has used deadly force against a fleeing felony suspect is one of reasonableness under the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Davis v. Little*, 851 F.2d 605 (2d Cir.1988); *Dodd v. City of Norwich*, 827 F.2d 1, 3 (2d Cir.), *vacated on other grounds following reargument*, 827 F.2d 7 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988). This Fourth Amendment analysis has, in cases involving arrest, displaced the due process standard once applied—as in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)—to all excessive force claims brought under section 1983. *See Davis v. Little*, 851 F.2d 605, at 608; *Martin v. Malhoyt*, 830 F.2d 237, 261 n. 76 (D.C.Cir.1987); *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987). Although there are lines of cases supporting both approaches, *see generally* Comment, *Excessive Force Claims: Removing the Double Standard*, 53 U.Chi.L.Rev. 1369 (1986), the Supreme Court's directive in *Garner*, and the Fourth Amendment's more direct applicability to an arrest situation, convince us that only the Fourth Amendment analysis is appropriate in such cases. *See Kidd v. O'Neil*, 774 F.2d 1252 (4th Cir.1985); *Gumz v. Morrissette*, 772 F.2d 1395, 1404 (7th Cir.1985) (Easterbrook, J., concurring),

---

(i) a felony or an attempt to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person; or

(ii) kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or

(b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape from custody, such person is armed with a firearm or deadly weapon; or

(c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force.

N.Y.Penal Law § 35.30 (McKinney 1987).

*cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); Comment, 53 U.Chi. L.Rev. at 1385.

■ The instruction given by the magistrate used the language of substantive due process, *see Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (suspects protected from police conduct that "shocks the conscience"); *Johnson v. Glick,* 481 F.2d at 1033 (inquiry whether force applied in good faith or maliciously for purpose of causing harm), and required the jury to find for the defendants unless the plaintiff proved that the officers acted with malice. The consideration of such subjective factors is inconsistent with the Fourth Amendment balancing test articulated in *Garner.* The proper standard requires that a jury consider whether the officers acted reasonably, under the totality of the circumstances, in using deadly force to effect the arrest, 471 U.S. at 7–11, 105 S.Ct. at 1699–1701 *see Davis v. Little,* at 609 (" 'balancing the infringement of the individual's interest caused by the police action against the governmental interest served by that action' ") (quoting *Martin v. Malhoyt,* 830 F.2d at 261). While the Fourth Amendment test does take into account the officer's knowledge, e.g., whether an officer is aware that the suspect is armed or dangerous, or knows whether the alleged felony involved violence, its primary focus is on the attendant circumstances and the objective reasonableness of the officer's actions. There is no room for consideration of the officer's motives or intent under this standard, at least not in this case,[2] and no requirement that an officer have acted with an improper motive in order to have acted unreasonably.

The magistrate also gave an incorrect and misleading instruction on New York's Article 35. The magistrate, after outlining the statute, stated:

[I]f the Defendant Police Officers Sherry and Zeihm acted within the limits of [Article 35], then they have not deprived the

Plaintiff of any liberty without due process of law. [Article 35] meets the requirements of the Federal Constitution. If they acted outside the limits of their lawful authority and with malice, then they deprived the Plaintiff of his rights.

The instruction's reference to a required finding of malice was clear error, in that it required the jury to apply the improper substantive due process standard. Additionally, we think that the charge on Article 35 was ill-advised and likely caused confusion for the jury. While the application of the statute appears to have been constitutional in this case, it requires the jury to conduct precisely the same analysis as does the reasonableness standard of *Garner.* The use of deadly force "when and to the extent [the officer] reasonably believes such to be necessary" should be understood as the functional equivalent of reasonableness under the totality of the circumstances. As such, while an instruction on state law is a necessary part of a charge on the affirmative defense of qualified good faith immunity, it is unnecessary when considering section 1983 liability.

As the instruction given by the trial court set an improper standard of proof for the plaintiff, the charge constituted "plain error," and we reverse without considering whether the appropriate objections were made below. *MacEdward v. Northern Elec. Co.,* 595 F.2d 105, 109 (2d Cir.1979); *Frederic P. Wiedersum Assocs. v. National Homes Constr. Corp.,* 540 F.2d 62, 66 (2d Cir.1976); *Williams v. City of New York,* 508 F.2d 356, 362 (2d Cir.1974); *cf. United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982) (criminal case).

Judgment reversed and cause remanded.

---

**2.** While it might be appropriate to consider the due process standard in a case where the plaintiff brought forward direct evidence that an officer's use of deadly force to effect an arrest was motivated out of malice, that is not the case here, and we will not speculate as to the proper jury charge to be given should that case arise.