Brian MITCHELL, Plaintiff–Appellant,

v.

CITY OF SAPULPA, a municipal corporation; Jack McKenzie, Chief of Police for the City of Sapulpa; Gary Young, Corporal, a police officer for the City of Sapulpa, Defendants–Appellees.

No. 86–2837.

United States Court of Appeals, Tenth Circuit.

Sept. 20, 1988.

Thomas E. Salisbury, Tulsa, Okl., for plaintiff-appellant.

Charles Doyle Watson, Jr., Drumright, Okl., for Gary Young, defendant-appellee (John Howard Lieber, Tulsa, Okl., for Jack McKenzie, defendant-appellee, with him on the brief).

C.M. Gibson, Sapulpa, Okl., for City of Sapulpa, defendant-appellee (John Howard Lieber, Tulsa, Okl., for Jack McKenzie, defendant-appellee, with him on the brief).

Before MOORE and BALDOCK, Circuit Judges, and BURCIAGA, District Judge.*

PER CURIAM.

Plaintiff appeals from the district court's granting of summary judgment in favor of defendants. Plaintiff brought suit pursuant to 42 U.S.C. § 1983, alleging that defendant Gary Young used deadly force to apprehend plaintiff, who was unarmed, while plaintiff was fleeing the scene of a burglary. For purposes of this lawsuit, plaintiff conceded that he was a fleeing felon. Plaintiff further alleged that the use of deadly force was pursuant to a policy adopted by defendants Jack McKenzie and the City of Sapulpa, Oklahoma. Defendants conceded plaintiff's allegations, at least for purposes of their motion for summary judgment. Defendants responded that their actions were justified by the state policy on the apprehension of fleeing felons contained in Okla.Stat. tit. 22, § 193: "If, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest." The parties agreed that this statute is a codification of the common law rule permitting deadly force against fleeing felons.

In *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985), the Supreme Court held that under the Fourth Amendment, deadly force may not be used "to prevent the escape of an apparently unarmed suspected felon ... unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others." In granting summary judgment, the district court held that this rule, announced after the date of plaintiff's injury, should not be applied retroactively.

This court applied *Garner's* analysis to facts similar to those at bar in *Ryder v. City of Topeka,* 814 F.2d 1412 (10th Cir. 1987). In *Ryder,* plaintiff appealed an adverse jury verdict finding that her constitutional rights were not violated when a police detective shot her while she was fleeing from the commission of a felony. These events took place in 1979, prior to the date of the *Garner* decision. The parties, however, did not raise the retroactivity issue before this court. Moreover, since the court concluded that defendants' actions did not violate the rule in *Garner,* the court was not required to reach the retroactivity issue. Accordingly, we do not consider *Ryder* to be binding authority on the issue of whether *Garner* should be applied retroactively.

The Supreme Court applies a three-pronged test for determining whether a case should be applied retroactively: (1) "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) the court " 'must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its

---

* Honorable Juan G. Burciaga, District Judge, United States District Court for the District of New Mexico, sitting by designation.

operation;'" and (3) the court must "weigh[ ] the inequity imposed by retroactive application." *Chevron Oil v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted).

At this time, only three circuits have directly addressed the retroactivity issue. In *Acoff v. Abston*, 762 F.2d 1543 (11th Cir.1985), the Eleventh Circuit concluded that *Garner* should be applied retroactively. The Second Circuit agreed with this view in *Davis v. Little*, 851 F.2d 605 (2d Cir.1988). In *Carter v. City of Chattanooga*, 803 F.2d 217 (6th Cir.1986), the Sixth Circuit initially reached the same conclusion. In a recent en banc decision, however, the Sixth Circuit vacated its prior decision and concluded that *Garner* should be applied nonretroactively. *Carter v. City of Chattanooga*, 850 F.2d 1119 (6th Cir.1988). Without directly addressing the retroactivity issue, at least one other circuit has applied *Garner* to a similar cause of action arising prior to the Supreme Court's decision. *See Griffin v. Hilke*, 804 F.2d 1052 (8th Cir.1986) (*Garner* applied to police shooting pursuant to department policy), *cert. denied*, —— U.S. ——, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987). Other courts have relied on *Garner* for a framework for Fourth Amendment analysis, without retroactively applying the explicit holding that the use of deadly force against a nondangerous fleeing felon is unreasonable. *Lester v. City of Chicago*, 830 F.2d 706, 711 (7th Cir.1987) (*Garner*, among other cases, cited for conclusion that Fourth Amendment applies to claim for arrest without probable cause and with excessive force); *Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C. Cir.1987) ("*Garner's* reasonableness formulation is the one typically used in court review of Fourth Amendment seizures"); *Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir.) (*Garner* applied to use of excessive force during detention), *cert. denied*, —— U.S. ——, 108 S.Ct. 311, 98 L.Ed. 2d 269 (1987); *Spell v. McDaniel*, 824 F.2d 1380, 1384 n. 3 (4th Cir.1987) (*Garner* applied to plaintiff's excessive force claim where "defendants [did] not contest this as a viable basis of claim"), *cert. denied*, —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *Fernandez v. Leonard*, 784 F.2d 1209, 1217 n. 3 (1st Cir.1986) (concluding that while rule that shooting by police was a seizure subject to Fourth Amendment protections was "clearly established" as early as December, 1976, rule that use of deadly force against a nondangerous fleeing felon was unreasonable under the Fourth Amendment settled a "novel question of law" which would not apply retroactively); *Bissonette v. Haig*, 776 F.2d 1384, 1386–87 (8th Cir.1985) (*Garner* supports view that otherwise permissible search or seizure may be rendered unreasonable if interests against seizure outweigh interests in favor), *aff'd by lack of quorum*, —— U.S. ——, 108 S.Ct. 1253, 99 L.Ed.2d 288 (1988); *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir. 1985) (applying *Garner* to traffic stop made without probable cause, resulting in injury to passenger); *Kibbe v. City of Springfield*, 777 F.2d 801, 808 (1st Cir. 1985) (*Garner* applied to uphold one of several possible jury inferences, including that police department permitted deadly force), *cert. dismissed*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987); *Kidd v. O'Neil*, 774 F.2d 1252, 1255 (4th Cir.1985) (in context of excessive force theory of recovery, *Garner* made "explicit what has long been at least implicit in earlier decisions of the Supreme Court" and "confirmed long-standing authority to the same effect" in the Fourth Circuit), *overruled on other grounds, Justice v. Dennis*, 834 F.2d 380 (4th Cir.1987); *cf. Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987) (citing *Garner* for balancing methodology in Fourth Amendment analysis); *United States v. Bigham*, 812 F.2d 943, 948 (5th Cir.1987) (cited as supporting proposition that "culpable intent" required for a § 1983 action will "vary according to the particular constitutional right infringed"); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) (distinguishing *Garner* from negligent killing in which plaintiff was "endangered by [the police officer's] ... misinterpretation of [plaintiff's acts]"); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1278 n. 87 (7th Cir.1984) (noting *Garner* was "to some extent related to the issue in the instant case").

In *Acoff v. Abston,* 762 F.2d 1543, 1548 n. 6 (11th Cir.1985), the Eleventh Circuit decided that *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), provided clearer guidance than *Chevron Oil* in deciding whether a constitutional decision by the Supreme Court should be applied retroactively.

> The most important factor in the retroactivity inquiry concerns the novelty of the decision. When a decision merely applies settled precedents to new and different factual situations, it applies retroactively. Conversely, where the decision expresses a rule of criminal procedure that is a clear break with the past, unanticipated and in conflict with old standards relied upon by law enforcement authorities, the decision has prospective application only.

*Acoff,* 762 F.2d at 1548 (relying on *Johnson* ); *accord Davis,* 851 F.2d at 609.

In its en banc opinion in *Carter,* 850 F.2d at 1119, the Sixth Circuit agreed with the view expressed in *Acoff* and *Davis* that whether a decision is a "clear break" is the threshold test for making a decision nonretroactive, and that a court should look to the second and third prongs of the *Chevron Oil* analysis only "[o]nce it has been determined that a decision has 'establish[ed] a new principle of law.'" *Carter,* 850 F.2d at 1122 (quoting *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355–56). The court similarly turned to *Johnson* for guidance in understanding the "clear break" principle.

> [T]he Court has not subsequently read a decision to work a "sharp break in the web of the law" ... unless that ruling caused "such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one...." Such a break has been recognized only when a decision explicitly overrules a past precedent of this Court, ... or disapproves a practice this Court arguably has sanctioned in prior cases, ... or overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved.

*Johnson,* 457 U.S. at 551, 102 S.Ct. at 2588 (citations omitted), *as quoted in Carter,* 850 F.2d at 1123.

The circuits are in disagreement, however, on the ultimate result of the retroactivity analysis. The Eleventh Circuit concluded that *Garner* did not break any new ground, because it merely "follow[ed] the 'balancing' methodology of many recent Supreme Court decisions." *Acoff,* 762 F.2d at 1549 (citing *Michigan v. Summers,* 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Moreover, the Supreme Court did not overrule any prior precedent. *Id.* "Nor does the decision apply to any longstanding and widespread practice which the Supreme Court had sanctioned in prior cases or ignored while lower courts had approved of the practice with near unanimity." *Id.* The Eleventh Circuit suggested that several opinions prior to *Garner* had suggested that deadly force violated the Constitution. *See Garner v. Memphis Police Dep't,* 600 F.2d 52 (6th Cir.1979) (*Garner* I); *Landrum v. Moats,* 576 F.2d 1320 (8th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *Mattis v. Schnarr,* 547 F.2d 1007 (8th Cir.1976), *vacated as moot sub nom, Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 413, 91 S.Ct. 1999, 2013, 29 L.Ed.2d 619 (1971) (Burger, J., dissenting). Finally, the Eleventh Circuit pointed out that the Court in *Garner* had itself noted that "reliance on the common law rule governing use of deadly force has steadily eroded and that many police departments restrict their use of deadly force more severely than necessary under the common law rule." *Acoff,* 762 F.2d at 1549 (citing *Garner* 471 U.S. at 15–19, 105 S.Ct. at 1703–05). Accordingly, the Eleventh Circuit concluded that *Garner* should apply retroactively.

The Second Circuit concurred that *Garner* did not mark a "clear break" in the law, but rather applied traditional Fourth Amendment analysis to a new set of facts. *Davis,* 851 F.2d at 609. Moreover, the

court noted, the *Garner* decision was in part foreshadowed in the Second Circuit by *Jones v. Marshall,* 528 F.2d 132 (2d Cir. 1975). *Davis,* 851 F.2d at 610.

The Sixth Circuit focused not on whether the analytical framework in *Garner* was a "clear break," but rather on whether the ultimate result was at all foreseeable. The court took the retroactivity test to be an equitable one. "The underlying concern expressed in these cases is the inequity and harshness retroactive application of a new rule of law would impose on parties who had no significant reason to doubt the validity or constitutionality of a statute or practice." *Carter,* 850 F.2d at 1123. The Sixth Circuit found it significant that although several states had abandoned the common law fleeing felon rule by the time *Garner* was decided, none had done so on constitutional grounds. *Id.* Indeed, prior to the Sixth Circuit's decision in *Garner v. Memphis Police Department,* 710 F.2d 240 (6th Cir.1983) (*Garner II*), *aff'd sub nom., Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), no circuit court had struck down the rule as violative of the Fourth Amendment. *Carter,* 850 F.2d at 1123. Significantly, the court reasoned, litigants had not succeeded in demonstrating the unconstitutionality of the fleeing felon rule under the "shocks the conscience" test of *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). *See Stinnett v. Virginia,* 55 F.2d 644, 646 (4th Cir.1932); *see also* 2 W. LaFave, *Search and Seizure* § 5.1(d) at 238, 239 (1978), *as cited in Carter,* 850 F.2d at 1127.

Moreover, prior opinions by district courts within the Sixth Circuit and the Sixth Circuit itself had held the Tennessee statute constitutional. *Carter,* 850 F.2d at 1123-25. The Sixth Circuit declared in *Wiley v. Memphis Police Department,* 548 F.2d 1247, 1250-51 (6th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), that as late as 1972, the Tennessee statute's "invalidity, or that of a similar statute ... had never been declared by any [c]ourt." Indeed, the Sixth Circuit commented that the Eighth Circuit, by deciding in *Mattis* that the fleeing felon rule was unconstitutional, had extended "to the fel-

on unwarranted protection, at the expense of the unprotected public." *Wiley,* 548 F.2d at 1252. The Sixth Circuit therefore concluded in *Carter* that the fleeing felon rule was a "longstanding and widespread practice" previously approved by the lower courts. *Carter,* 850 F.2d at 1123 (citing *Johnson,* 457 U.S. at 551, 102 S.Ct. at 2588). Moreover, "[i]f it did not overrule a clearly established precedent in the Supreme Court, *Tennessee v. Garner* decided 'an issue of first impression whose resolution was not clearly foreshadowed.'" *Id.* at 1129 (quoting *Chevron Oil,* 404 U.S. at 106, 92 S.Ct. at 355).

■■■ We also begin our analysis with the premise that as a general rule, "retroactivity is appropriate unless the new decision overrules past precedent on which the parties may have relied." *EEOC v. Gaddis,* 733 F.2d 1373, 1377 (10th Cir. 1984). There appears to be no reason to assume, however, that the Supreme Court's opinion in *Johnson,* which considered retroactivity in a criminal case, applies with greater force than does *Chevron Oil* in determining whether a new decision represents a "clear break" with the past. Therefore, in accordance with *Chevron Oil,* 404 U.S. at 106-107, 92 S.Ct. at 355-56. we turn our attention to determining whether the *Garner* decision overruled "clear past precedent on which the litigants may have relied" or decided "an issue of first impression whose resolution was not clearly foreshadowed."

Prior to the *Garner* decisions, no circuit court had held that the fleeing felon rule violated the Fourth Amendment. *Cf. Landrum,* 576 F.2d at 1325 (where no fleeing felon statute existed, shooting to kill unarmed suspect could violate procedural due process); *Mattis,* 547 F.2d 1007 (fleeing felon rule violated substantive due process); *Jones v. Marshall,* 528 F.2d 132, 142 (2d Cir.1975) (suggesting in dicta that the Fourteenth Amendment might remove the shield of fleeing felon rule in some circumstances). *But see Jenkins v. Averett,* 424 F.2d 1228, 1231 (4th Cir.1970) (grossly negligent shooting of fleeing nonfelon stated constitutional claim as an "unreasonable

interference by police officers" under Fourth Amendment). By the same token, no circuit court had expressly held that the fleeing felon rule did *not* violate the Fourth Amendment. *See Garner II*, 710 F.2d at 245 ("We have thoroughly explored the digests and the electronic case retrieval systems, and our research discloses only one appellate decision *[Jenkins]* discussing Fourth Amendment limitations on the use of deadly force to capture a fleeing suspect."); *see also Carter*, 850 F.2d at 1139 (Merritt, J., dissenting). Thus, at the time *Garner* was decided, "the area ... [was] one still characterized by shifting sands and obscured pathways." *Jones*, 528 F.2d at 141.

Focusing entirely on the absence of Fourth Amendment case law in this area, however, provides an unduly narrow view. The common law provided the precedential framework for the fleeing felon rule. Moreover, although, as the Supreme Court noted in *Garner*, 471 U.S. at 15–19, 105 S.Ct. 1703–05, the social trend was moving toward repeal of the fleeing felon rule, the legal "trend" tended more toward the status quo. By the time *Garner* was decided by the Supreme Court, only two circuits, the Sixth and the Eighth, had expressly held under any amendment that a statute incorporating the fleeing felon rule was unconstitutional. *See Garner II*, 710 F.2d 240; *Mattis*, 547 F.2d 1007.[1] In contrast, several courts had upheld the rule. *See Carter*, 850 F.2d at 1123–29, and cases cited therein; *see also* 1 C. Tocia, *Wharton's Criminal Procedure* § 81 at 198–99 (1974 and cum.supp.1987), and cases cited therein; Annotation, *Modern Status: Right of Peace Officer To Use Deadly Force in Attempting to Arrest Fleeing Felon*, 83 A.L.R.3d 174 (1978), and cases cited therein. Moreover, the Sixth Circuit, which first decided that the Fourth Amendment prohibited the use of deadly force against nondangerous fleeing felons, *see Garner II*, 710 F.2d 240, has now conclud-

ed that the Supreme Court's opinion in *Garner* should be applied nonretroactively. While the court's subsequent conclusion in *Carter* that *Garner* is nonretroactive is not binding on this court, the decision is highly persuasive.

Prior to *Garner*, the Tenth Circuit, although never expressly precluding other constitutional limitations, had consistently judged allegations of physical abuse by the police prior to incarceration by substantive due process standards. *See, e.g., Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Significantly, no court had expressly held that the fleeing felon rule "shock[ed] the conscience" of the court, *see Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the standard governing the substantive due process limitations on police conduct. *Carter*, 850 F.2d at 1127 (quoting 2 W. LaFave, *Search and Seizure* § 5.1(d) at 238, 239 (1978) ("The argument that the common law rule is unconstitutional under the *Rochin v. California* ... shocks the conscience test has not prevailed.")). The issues under the two standards are clearly different. Tenth Circuit precedent thus did not foreshadow the *Garner* decision that the common law rule, if applied to permit deadly force in these circumstances, was unconstitutional.[2]

We agree with the First and Sixth Circuits that the Supreme Court in *Garner* decided a novel question of law. While the *Garner* decision may not have been a clear break with past precedent, the holding certainly represents a decision on "an issue of first impression whose resolution was not clearly foreshadowed," *Chevron Oil*, 404 U.S. at 106, either in this circuit or in the nation. *Carter*, 850 F.2d at 1129. Accordingly, we turn to the remaining two *Chevron Oil* factors.

Under the second part of the *Chevron Oil* test, we must review "the prior history of the rule in question, its purpose and

---

1. We note that the *Mattis* decision, having been vacated as moot, has no precedential value.

2. We note, however, that one district court in this circuit had foreseen what was to become

the conclusion of the Supreme Court in *Garner*. *See Jacobs v. City of Wichita*, 531 F.Supp. 129 (D.Kan.1982) (rejecting common law privilege as a defense to action under 42 U.S.C. § 1983).

effect," in an effort to determine "whether retrospective operation will further or retard its operation." *Chevron Oil*, 404 U.S. at 107, 92 S.Ct. at 355 (citation omitted). The purposes of 42 U.S.C. § 1983 are deterrence of unconstitutional actions and compensation to the victims of such actions. *See Owen v. City of Independence*, 445 U.S. 622, 651, 100 S.Ct. 1398, 1415, 63 L.Ed. 2d 673 (1980). Deterrence may at times favor retroactive application of even "newly recognized" constitutional principles. *See id.* at 655, 100 S.Ct. at 1417.

We concur with the majority opinion in *Carter*, however, that deterrence in these circumstances would not be served by making *Garner* retroactive. In *Owen*, the Supreme Court was addressing whether a municipality could assert the good faith of its officers as a defense to an action under 42 U.S.C. § 1983. In that context, "the Court announced that it wanted to 'create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.' " *Carter*, 850 F.2d at 1142 (Merritt, J., dissenting) (quoting *Owen*, 445 U.S. at 651–52, 100 S.Ct. at 1415–16) (footnote omitted)). This language, suggesting that municipalities in doubt about the constitutionality of their actions should err on the side of caution, does not address a situation such as this one where a municipality acted pursuant to a state statute incorporating a common law rule that had been declared facially invalid by only two circuit courts. *See Garner II*, 710 F.2d 240; *Mattis*, 547 F.2d 1007. We agree with the majority in *Carter* that it is significant that the Supreme Court concluded not that the police conduct shocked the conscience of the Court, but that it was unreasonable under the Fourth Amendment. A determination that behavior shocks the conscience of the court inherently suggests that a municipality has not used due caution in guarding its residents' constitutional rights; in contrast, a holding that conduct is unreasonable does not provide clear guidance on whether a municipality should have foreseen such a result. Rather, we must look to the rule itself and to prior precedent to determine whether a

municipality sensitive to the constitutional implications of its actions would have necessarily questioned the validity of the common law rule.

As noted by the Sixth Circuit in *Carter*, 850 F.2d at 1124–25, "[s]tate statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared." *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153, 64 S.Ct. 474, 479, 88 L.Ed. 635 (1944), *as cited in Beech v. Melancon*, 465 F.2d 425, 426 (6th Cir.1972), *cert. denied*, 409 U.S. 1114, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973); *cf. Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) ("[T]he citizens of a particular [municipality] should not bear singular responsibility" for the effectuation of state policy.). We conclude that in these circumstances, where a municipality acting pursuant to state statute has little reason to question the legitimacy of its policy, retroactivity would have little if any deterrent effect.

The goal of compensation to victims of constitutional violations will always presumably favor retroactivity of new constitutional decisions. The inquiry, however, cannot end there. Rather, the Supreme Court has instructed courts to weigh the "merits and demerits" in each case. In this regard, we agree with the Sixth Circuit and the district court below that "compensation to the victim's family … is … collateral to the ultimate purpose of the new rule—to deter the conduct of law enforcement officers." *Mitchell v. City of Sapulpa*, Unpublished Order No. 85–C–1104–C (N.D.Okla. filed November 17, 1986). Although "[a] damages remedy against the offending party is a vital component of any scheme of vindicating cherished constitutional guarantees," *Owen*, 445 U.S. at 651, 100 S.Ct. at 1415, a "vital component" is not the equivalent of a primary purpose. "The primary reason for imposing § 1983 liability on a municipality is deterrence." *Carter*, 850 F.2d at 1130. Having determined that retroactivity would have little deterrent effect, we conclude the enforcement mechanism aspect of a retroactive damages remedy loses its force. Although compensation alone may also be

one of the goals of 42 U.S.C. § 1983, compensation without the accompanying deterrent effect is not sufficient in these circumstances to warrant making *Garner* retroactive.

The third part of *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355–56, requires us to "weigh[ ] the inequity imposed by retroactive application." We agree with the majority in *Carter* that the potential severe financial strain placed on cities by retroactivity outweighs the plaintiffs' interest in compensation. The Sixth Circuit persuasively reasoned, relying in part on Justice Powell's view in dissent in *Pembaur v. Cincinnati,* 475 U.S. 469, 495, 106 S.Ct. 1292, 1306, 89 L.Ed.2d 452 (1986) (citing *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978)), that "[c]ivil liability should not attach [to local government units] unless there was notice that a constitutional right was at risk." *Carter,* 850 F.2d at 1131. In relying on Oklahoma law and the common law rule, defendants were doing "more than merely exercising good faith; [they were] acting in reliance on what appeared over many years to have been valid and proper state directed police conduct and policy." *Id.; see also Familias Unidas,* 619 F.2d at 404. Accordingly, after careful review of the *Chevron Oil* factors, we conclude that *Garner* should not be applied retroactively to impose liability on defendants.

Plaintiff contends that even if he may not seek damages from defendants, he should be permitted to proceed with his action for a declaratory judgment that the Oklahoma statutes ostensibly permitting police officers to use deadly force against unarmed and nondangerous fleeing felons are unconstitutional. Plaintiff, however, has not explained what current danger the Oklahoma statutes pose to his life or health. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). Accordingly, the federal courts cannot hear this claim because there exists no case or controversy. *Id.*

Finally, plaintiff argues that even if he could not bring a claim under *Garner,* he should be permitted to bring a claim based on denial of his substantive due process rights arising from Officer Young's use of excessive force. We agree that the Oklahoma fleeing felon rule would not provide an absolute defense had the officer in this case used excessive force. "[I]n interpreting the scope of § 1983 we are not bound by the state law of torts or the defenses of privilege that law provides." *Jones,* 528 F.2d at 137; *see also Jacobs,* 531 F.Supp. at 130. Accordingly, we will analyze plaintiff's allegations to determine whether he could have succeeded on a claim of excessive force.

In *Hewitt,* 758 F.2d at 1379 (citation omitted), this court listed several factors which were relevant to whether the use of force was excessive: "the relationship between the amount of force used and the need presented, the extent of the injury inflicted, and the motives of the state officer. Force inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, may be redressed under section 1983." We conclude that Officer Young's wounding of an unarmed fleeing felon in these circumstances did not amount to excessive force under the standard described in *Hewitt.*

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.